Donald E. JONES, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 12620.

District of Columbia Court of Appeals.

Submitted June 8, 1978.

Decided Sept. 18, 1978.

Simon L. Weker, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Robert F. O'Neill and John H. Korns, II, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before YEAGLEY, MACK and FERREN, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted of possession of marijuana (D.C.Code 1973, § 33–402). The sole question presented for review is whether the trial court erred in denying appellant's motion to suppress the marijuana found in his car by a police officer. In answering this question, we are faced with another of "the myriad daily situations in which policemen and citizens confront each other." *Terry v. Ohio,* 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968).

The testimony introduced at the hearing on appellant's motion to suppress indicated the following. Shortly after 1 a. m. on October 31, 1976, Officer Carl H. Schanberger of the Metropolitan Police Department, was alone in his police cruiser checking the parking lots in the 2200 block of Wisconsin Avenue, N.W. In recent months there had been problems in the area with drug trafficking and robberies. The officer did not, however, have a report of any crime having been committed in the area on the night in question.

Officer Schanberger was driving at a slow pace with his lights off when he saw appellant and another man sitting in a car at the rear of 2213 Wisconsin Avenue, N.W., with the inside dome light on. The passenger was smoking a cigarette, and as the officer attempted to get closer to the car, the passenger made a quick movement as though he was trying to hide something under the seat. The officer suspected that he was trying to hide "some type of weapon." After turning on his headlights and spotlight, and calling for a backup unit, the officer got out of his cruiser, approached the right side of the vehicle, and immediately ordered the two occupants out. When the man on the passenger side got out, the officer saw a greenish weed on the right front seat in a brown transparent wrapper, and numerous small brown envelopes on the rear seat. From his drug-related experience, the officer knew that such envelopes were used to package marijuana for sale. He also saw pinkish pills on the rear seat. The officer arrested the two men. For reasons discussed herein, we reverse.

In *Terry v. Ohio, supra* at 16, 88 S.Ct. at 1877, the Supreme Court held that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" within the meaning of the Fourth Amendment. The Court recognized, however, that not every confrontation between a police officer and a citizen results in a "seizure." *Id.* at 19 n.16, 88 S.Ct. 1868. *See Coleman v. United States,* D.C.App., 337 A.2d 767 (1975). In this case, Officer Schanberger did not "seize" appellant and his companion merely by walking to their car and speaking to them. At that point, their liberty had not been restrained by either physical force or a show of authority. Although the officer was acting largely on suspicion

aroused as a result of his experience, we have no problem with his approaching the car to make inquiry of the occupants. The Supreme Court has said:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response.
>
> . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citations omitted).]

Here, however, the officer immediately ordered the two men out of the car without acquiring additional information. *Terry* and its progeny established that the police may stop a person for brief detention and questioning when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1880. In the instant case, the "specific and articulable facts," if any, were limited. Pending further examination, it would appear that when the officer ordered the two men from the car, he "seized" them for Fourth Amendment purposes. *See In re J.G.J.,* D.C.App., 388 A.2d 472, 474 (1978).

The government attempts to justify the officer's decision to order appellant and his companion out of the car by utilizing a two-step analysis. First, the government claims that in light of the time of the day, the type of crime in the particular area, and the passenger's furtive gesture, the officer acted reasonably in approaching the car to speak to the occupants. We agree with this part of the government's analysis. The government further maintains, however, that under the doctrine of *Pennsylvania v. Mimms,* 424 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the officer could order the occupants out of the car for his own protection once he had reason to speak to them. We disagree with this second prong of the government's argument and find its reliance on *Mimms* to be misplaced.

In *Mimms,* two police officers observed a man driving an automobile with an expired license plate. The officers stopped the vehicle for the purpose of issuing a traffic citation. One of the officers approached the vehicle and ordered the man out of the car. When the officer saw a large bulge under the man's sports jacket, he frisked him and discovered a revolver in his waistband.

In *Mimms,* the Court noted that there was no question as to the "propriety of the initial restrictions on respondent's freedom of movement." Mimms had been validly detained by the police for a traffic violation. Hence, the sole question was the reasonableness of "the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped." *Id.* at 332. In upholding the actions of the officer, the Court held "only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at 333–34 n.6. Contrary to the government's position, the Court specifically noted that "we do not hold today 'that whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car.'"

■ In our view, *Mimms* does not support the government's contention that Officer Schanberger acted reasonably in ordering appellant and his companion out of the car. *Mimms* simply holds that a police officer who has a valid reason to "seize" a motorist may, in order to protect himself,

order the motorist to stand outside his car. *Mimms* does not, however, hold that a police officer may similarly intrude upon a person's right to personal security in a situation where he is not detaining him for a violation of the law, but merely desires to make inquiry of circumstances which are only marginally suspicious. To hold otherwise would allow the government to bootstrap its way to a full blown "seizure" in the absence of articulable facts indicating that "criminal activity is afoot," *Terry, supra,* 392 U.S. at 30, 88 S.Ct. 1868.

Having rejected the government's analysis, there remains the question whether the appellant was reasonably seized by the officer on the basis of specific and articulable facts that criminal activity was afoot. On the basis of the testimony introduced at the suppression hearing, we conclude that the facts known to the officer did not rise to the level of articulable suspicion.

■ The facts on which the officer based his decision to "seize" appellant and his companion showed only that two men were seen sitting in an automobile late at night in an area where there had been illicit drug activity and robberies, and that when the officer moved close to their vehicle in his darkened patrol car, one of the men attempted to hide something under the seat. The officer had no complaint or report of crime, had never seen appellant or his companion before, and did not see them engage in criminal conduct. In short, the record contains little if any evidence from which one might conclude that the officer had reasonable grounds to believe that criminal activity was afoot.

The fact that the officer encountered the two men during the early morning hours in an area where there had been robberies and drug trafficking certainly did not provide a basis for the "seizure." *See Coleman v. United States, supra; Robinson v. United States,* D.C.App., 278 A.2d 458 (1971). Nor did the fact that the passenger moved in a manner which led the officer to suspect

that he might be hiding a weapon under the seat. *Tyler v. United States,* D.C.App., 302 A.2d 748 (1973); *Robinson v. United States, supra.* In this case, the officer seized the two men on the basis of suspicion, rather than on the specific and articulable facts necessary to justify a "seizure." In so doing, he violated the Fourth Amendment's proscription against unreasonable searches and seizures.

■ Nor can the seizure of evidence be sustained under the plain view exception to the search warrant requirement. To invoke the plain view exception, the officer must lawfully be present at the situs of the seizure, and discovery of the evidence must be inadvertent. *Lewis v. United States,* D.C. App., 379 A.2d 1168, 1170 (1977). The instant record leads us to conclude that Officer Schanberger saw the evidence "in plain view" only after he illegally ordered the occupants out of the vehicle. He testified:

> I got out of the vehicle and approached, I believe it was, the right side of the vehicle, and told both subjects to alight from the vehicle. When defendant from the right front alighted from the vehicle, I observed what appeared to be a greenish weed, I believe, on the right front seat. . . . I also had the driver alight from the vehicle, had them both walk to the rear of the car. . . . Also observed in the vehicle were approximately a hundred small brown envelopes which were located in the rear seat, which from past experience were known to contain marijuana when they sell it.

The court found that

> when [Officer Schanberger] asked the defendants to alight from the car, they did alight from the car, and he saw in plain view, according to the officer's experience by his testimony, what appeared to be some type of greenish weed and a transparent bag.

We hold that at the point the officer ordered the occupants out of the car, and thus unlawfully seized them, he was no longer

lawfully present for plain view purposes; and absent a finding that the officer saw the marijuana in the car during the period of a valid *Terry* stop, prior to unlawful seizure of the occupants, the motion to suppress the marijuana evidence accordingly should have been granted.[1]

Holding as we do that on the limited facts available to the officer here the trial court erred in denying appellant's motion to suppress, the case is

*Reversed.*

---

1. Parenthetically, we emphasize that this is not a case in which an officer who approaches the occupants of a vehicle for questioning orders them out only after observing articulable facts suggesting that they are armed and dangerous. On such facts, the officer might well have reasonable cause to order the occupants out of the car as a safety precaution and to conduct a limited weapons search. *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. 1921.