Michael A. LITTLE, Appellant,

v.

UNITED STATES, Appellee.

No. 12609.

District of Columbia Court of Appeals.

Submitted Aug. 3, 1978.
Decided Oct. 2, 1978.

Christopher A. Teras, Washington, D. C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty. and John A. Terry, Michael W. Farrell, Mary Ellen Abrecht, and William J. Birney, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

After a jury trial, appellant was convicted of carrying a pistol without a license, in violation of D.C.Code 1973, § 22–3204. He contends on this appeal that the trial court erred in denying a motion to suppress the gun and oral statements made by appellant following his arrest. Finding no error, we affirm.

The police officers who made the stop in question here both testified at the suppression hearing. On November 18, 1976, the two officers, in an unmarked car, were patrolling residential neighborhoods in upper Northwest Washington, for the express purpose of watching for street robberies. At about 9:15 p. m., the officers first noticed appellant and two male companions travelling west in a car at about 15 to 20 miles per hour on McKinley Street away from Connecticut Avenue. Appellant was driving the car. Officers said they noticed the car because of its low rate of speed and because the passengers were looking from side to side at people walking on the sidewalks. The officers followed the car to Western Avenue, where it turned around to head back to Connecticut Avenue. At Chevy Chase Circle, appellant turned the car onto Connecticut Avenue and pulled over to the curb by a man standing near a bus stop. After a brief conversation with that man, appellant pulled away from the curb and continued south. At Legation Street, the car turned left and drove up and down various back streets and alleys for at least the next ten minutes. At least once appellant stopped the car and the three men watched other people park cars, get out and go into houses. At one point, appellant pulled the car over to the curb and turned off the lights, from which the officers concluded that the three in the car now knew they were being followed. Shortly thereafter, the car drove on again, stopping near Connecticut Avenue and McKinley Street, where appellant and the front-seat passenger, one Moore, changed places. At that point the two officers approached the car. Appellant, then in the passenger's seat, was asked for a driver's license, and replied that he didn't have one. He was asked to get out of the car. When he did so, one of the officers saw a handgun on the floor of the car on the passenger's side. The second officer told the other person in the front seat to get out of the car, at which time he saw the gun and seized it.

All three occupants of the car then were arrested, advised of their Miranda[1] rights and taken to the police station. Appellant signed a PD 47, indicating that he understood and waived his rights. Appellant told the officers that he knew the gun was there because he had seen Moore put it under the seat. He told the officers that he and his companions were "going to go out and get money" that evening. He also said that he had changed places with the passenger because he lacked a driver's license.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Appellant argued that the initial stop of the three men was illegal because the officers lacked the "specific and articulable facts, which taken together with the rational inferences from those facts" justify an investigatory stop.[2] Appellant contends that the gun and his statements to the police should have been suppressed as products of an illegal stop.

The trial court found that

the very, very strange and bizarre activities of this automobile, cruising around in that particular area after night, their actions in shutting off the lights, turning on the lights, would certainly give cause and, . . . would require a reasonable and prudent officer to make an appropriate inquiry. . . .

We agree with the trial court that, under these circumstances, it was reasonable for the officers to escalate their investigation. Had they stopped the car to make inquiry of the occupants and to ascertain their identifications, they would have been justified. Nothing like this occurred. Appellant had stopped the car of his own accord and had changed places with the front-seat passenger. The police action complained of here was the approach to the car and the request for a driver's license.

Such conduct reveals no forcible apprehension. "Here [the suspect] was merely approached and questioned . . ." *People v. DeBour,* 40 N.Y.2d 210, 217, 386 N.Y.S.2d 375, 380, 352 N.E.2d 562, 567 (1976). He was not seized in the sense of forced restraint on movement. Nor, on the other hand, can it be said that the police conduct was totally without reasonable basis—it was not whimsical.

At least one court has held in similar circumstances that ". . . the identification of oneself as a police officer, and the request to see a driver's license, with nothing more, is not a seizure." *State v. Foster,* 237 S.E.2d 589 (S.C.1977). In a very thoughtful opinion, the Court of Appeals of New York, in *People v. DeBour, supra,* took *the* view that an all or nothing approach (*i. e.,* every police-initiated encounter with a

citizen must be justified by a basis warranting outright seizure of the person) is dangerous to accepted Fourth Amendment standards.

This approach is hardly reasonable and if adopted would probably lead to an overcompensation in the form of a dilution of the standards embracing reasonable suspicion or probable cause. "The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice'" (*Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441; *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134). Common sense and a firm grasp of the practicalities involved compel us to reject an all or nothing approach. The crucial factor is whether or not the police behavior can be characterized as reasonable which, in terms of accepted standards, requires a balancing of the interests involved in the police inquiry. [*Id.,* 40 N.Y.2d at 217, 386 N.Y.S.2d at 381, 352 N.E.2d at 568 (citations omitted).]

The balance struck requires recognition of the role of police and the needs of the society they serve.

Consequently unrealistic restrictions on the authority to approach individuals would hamper the police in the performance of their other vital tasks. This is not to say that constitutional rights to privacy and freedom from unreasonable searches and seizures must be abandoned to accommodate the public service aspect of the police function. The overriding requirement of reasonableness in any event, must prevail. [*Id.*]

The court then observed that:

[T]here is scant appellate authority on [the] subject . . . [of] the constitutional propriety of an investigative confrontation (. . . but see the separate concurrences of Justices Harlan and White, who maintained that there is no

2. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

doubt that a policeman can address questions to anyone on the street). Nevertheless the practical necessities of law enforcement and the obvious fact that any person in our society may approach any other person and attempt to strike up a conversation, make it clear that the police have the authority to approach civilians. While the extent of this power may defy precise definition it would be unrealistic to say it does not exist at all. [*Id.* at 219, 386 N.Y.S.2d at 382, 352 N.E.2d at 569 (citations and footnotes omitted).]

■ We conclude that the proper analysis in resolving a case like this one is to recognize that an approach to a stopped vehicle and the request for display of a driver's license by an indeed suspicious driver, is, if a seizure at all, one so slight as to require minimal justification—absence of whim or caprice. The Supreme Court has recognized that various degrees of Fourth Amendment intrusion require varying levels of justification:

[W]e need presently deal only with the narrow question of whether the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment. This inquiry must therefore focus not on the intrusion resulting from the request to stop the vehicle or from the later "pat-down," but on the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped. [*Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977).]

The Court described the additional intrusion resulting from the order to get out of the car as "de minimis." *Id.* at 333. We hold that nothing is revealed on the record requiring the conclusion that unconstitutional—unreasonable—police conduct triggered exclusionary rule considerations prior to the time appellant stated he had no driver's license.

■ Once appellant denied possession of a driver's license, it was not inappropriate to order him out of the car. *See Pennsylvania v. Mimms, supra.* Driving without a valid operator's permit is a traffic offense for which appellant could have been arrested. D.C.Code 1973, § 40–301.

 The trial court found that the gun was in plain view on the floor of the car. Although appellant testified to the contrary, the trial court's finding is supported by the police officer's testimony. We cannot disturb that finding, *see* D.C.Code 1973, § 17–305. Accordingly, the gun was properly admitted into evidence.

Appellant does not contend that his waiver of *Miranda* rights was invalid. Our ruling that the initial encounter was not a "seizure" of appellant's person, thus defeats his argument that his statements, made subsequent to his arrest, should have been suppressed.

The judgment appealed from is

*Affirmed.*