**UNITED STATES of America**

v.

**Curtis E. SMITH.**

**Crim. No. 84–266.**

United States District Court,
District of Columbia.

Sept. 18, 1984.

Pamela B. Stuart, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Stephen Goldblatt, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

This matter is before the Court on defendant's Motion to Suppress, as fruits from an illegal stop and warrantless arrest and search, all physical evidence seized by the police at the time of defendant's arrest on July 1, 1984, which included a double-barrel shotgun and a number of bags of marijuana. An evidentiary hearing was held by the court. Upon consideration of the evidence adduced, the motion and supporting memoranda submitted by the parties, the arguments of counsel, and based upon the findings set forth, the motion will be denied.

*Facts*

On July 1, 1984, at approximately 6:50 P.M., two U.S. Police officers, Officers Lawston and his rookie trainee associate, patrolling Rock Creek Park in a marked police cruiser, observed a red Ford Pinto parked illegally in the middle of the entrance roadway to the Park Road tennis courts. The tennis court drive is located within blocks of a high drug sale and use area. The tennis court area is frequented by drug users.

At the time the officers approached defendant's car, it was still light outside, there was good visibility and the tennis courts were in use. As the officers drove up, they observed that the doors and the hatchback of the car were all open and that it was occupied by three individuals. When the cruiser approached the rear of the defendant's automobile, the passengers quickly turned around and saw the officers. The occupant in the driver's seat then immediately bent forward as if to hide something under the front seat. The officers alighted from their cruiser and stood on either side of the Pinto. When an inquiry was made as to what they were doing, the driver of the Pinto, later identified as defendant Smith, stated that they were cleaning the car even though no cleaning materials were visible. Officer Lawston then testified that he suspected narcotics activity and feared for the safety of himself and his

partner, who was a rookie in training. Officer Lawston had been involved in Rock Creek Park in over 200 narcotics arrests. Over 100 arrests had involved dangerous weapons. Because of his co-officer's lack of experience and recognizing the inherent dangers (after receiving the untrue explanation for the illegally parked automobile), Officer Lawston ordered the occupants out of the car in an effort to protect himself and his rookie partner. He then walked around from the passenger's side to the driver's side of the automobile. When he reached the driver's side the door was open and he could plainly see four inches of what he believed to be a double-barrel shotgun protruding from under the driver's seat. He retrieved the weapon, placed it on the roof of the car and asked what the gun was doing there. Smith initially responded that he had never seen the gun before but later claimed he had found it in the woods.

The officers then conducted a pat down of the occupants. At that point, only the driver, defendant Smith, was placed under arrest. Several minutes after the arrest the transport officer who had arrived on the scene conducted a more thorough search of the defendant Smith and discovered in his pants a U.S. Navy payroll bag containing ten "nickel" bags of marijuana.

*The Law*

In *Terry v. Ohio,* 392 U.S. 1, 10, 88 S.Ct. 1868, 1874, 20 L.Ed.2d 889 (1968), the Supreme Court ruled that police officers may not only stop but also make a protective frisk of an individual where he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous ..." *Id.* at 30, 88 S.Ct. at 1884. The Court expanded the *Terry* rule in *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331 (1977), holding that when a driver of a "motor vehicle has been lawfully detained for a traffic violation, the officer may order [him] out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and

seizures." The Court reasoned that the state's interest in the safety of its officers is considerable and outweighs the *de minimus* additional intrusion on the driver already legitimately stopped. *Id.* at 110, 111, 98 S.Ct. at 333.

The District of Columbia Circuit applied *Mimms* in *United States v. Wilkerson,* 598 F.2d 621 (1978). There police responded to a complaint about a car blocking the driveway in a neighborhood that had been the source of numerous complaints involving prostitution and juvenile robberies. The police observed the car speed away, travel in excess of the speed limit and swerve in and out of the traffic lane. The appellate court affirmed the trial court's denial of defendant's motion to suppress stating that the parking complaint and traffic violations justified the stop. The unsettling developments after the stop (i.e., the driver's failure to produce personal identification, etc.) justified the officers' ordering the occupants out of the car. *Id.* at 624. Even before *Mimms* this Circuit in *United States v. Green,* 465 F.2d 620 (1972), held that where officers observed a car run a stop sign late at night and furtive movements of the driver, they acted reasonably in ordering the driver from the car and frisking him and searching beneath the seat of the car. The routine traffic stop ceased to be such when the officers observed furtive movements by the occupant of the vehicle and became reasonably fearful of danger. Judge Tamm stated that the conduct of the officers as to what constituted reasonable fear and justified the intrusion "must be viewed from a vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest, guided by his experience and training." *Id.* at 623.

In this case it is evident the officers were justified in approaching the car and making inquiries because it was illegally parked. It makes no difference that the officers actually issued or would have issued a traffic citation. Originally their attention was legitimately drawn to the car parked inappropriately in the middle of the

travelled roadway with all its doors open. Once they were alerted by that factor and combined with the untruthful explanation of the driver for the reasons for being so stopped, the officer was justified in ordering the occupants out of the car based on his experience as a matter of self-protection. He had testified that his years of experience and training showed that in this area such actions as he observed led him to suspect narcotics use. The area being an extremely frequented one for drug consumption and the location within a few blocks of a high drug sales area taught the officer that such a situation was not unusual. He had personally made between 50 and 75 arrests for possession of drugs and weapons in that immediate area. His testimony clearly and reasonably showed a concern for his partner's and his own safety. He had seen the driver making furtive movements as though trying to place or hide something under the front seat. Together with the fabrication for the reason for being illegally parked in that particular location, it cannot be said that the officer had insufficient basis upon which to request the exit from the vehicle and to observe the weapon, part of which was exposed and readily seen without intrusion into the automobile. Given that the reasonableness of the actions of the arresting officer are not to be disected and viewed singly but rather as a whole, the actions of the officer certainly comport with the reasonableness standard in this case. *United States v. Young*, 598 F.2d 296, 298 (D.C. Cir.1979). ("They are to be viewed through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training.")

Defendant cited *Jones v. United States*, 391 A.2d 1188 (D.C.1978), as controlling precedent, wherein the D.C. Court of Appeals held that a police officer may not order a motorist out of his car where he is not detaining him for violation of law but merely desires to make inquiry of circumstances which are only marginally suspicious. Whatever the precedential value of the case, its facts are not apposite. In that case there were two men sitting in an automobile late at night lawfully parked on Wisconsin Avenue, N.W. The passenger was smoking a cigarette and the inside dome light was on. The officer thought he saw the passenger make some type of quick movement. Without any inquiry, they immediately ordered the occupants out of the car and discovered narcotics paraphenalia. The District of Columbia Court of Appeals held that the officers acted reasonably in approaching the car to speak to the occupants but lacked specific and articulable facts necessary to justify ordering the occupants out of the car and therefore ordered suppression of the items seized. The facts in this case are not sufficiently analogous to the *Jones* decision to justify any suppression of the items seized herein. In *Jones* the occupants were apparently lawfully parked and were sitting in their car late at night with the inside light on. In this case, as set forth above, the occupants were illegally parked and gave an untrue explanation of their presence in the area. The police were able to provide reasonable, articulated facts justifying their request to have the occupants alight from the automobile as necessary for their safety. There was no physical hands-on search of the automobile or the driver until after the weapon had been seen from outside the automobile and then retrieved from under the driver's seat.

Under *Mimms*, a mere inconvenience cannot prevail against legitimate concerns of the officers for safety. *Pennsylvania v. Mimms, supra*, 434 U.S. at 111, 98 S.Ct. at 333. Officer Lawston testified without challenge that he was concerned about his safety and the safety of his rookie partner. As such, he was justified in taking reasonable precautions in ordering the occupants out of the car. As Judge Leventhal observed in *Bailey v. United States*, 389 F.2d 305, 315 (D.C.Cir.1967) (concurring), "As a society, we routinely expect police officers to risk their lives in apprehending dangerous people. We should not bicker if in bringing a potentially dangerous situation under control they issue commands and take precautions which reasonable men are

warranted in taking." *See also, Little v. United States,* 393 A.2d 94 (D.C.1978).

 Under the "plain view" doctrine announced in *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), and reaffirmed in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983), a warrantless seizure of private possessions is permitted if: (1) the police lawfully make an "initial intrusion" or are properly within a position to view a particular area; (2) the discovery of evidence is "inadvertent"; and (3) the items seized are "immediately apparent" to the police as evidence of a crime, contraband, or otherwise subject to seizure. *Id.* Applying this standard, the Court concludes that the seizure of the double-barrel shotgun was lawful. Smith and his companions were lawfully ordered out of the car. The gun was discovered inadvertently as Officer Lawston looked inside the car from the driver's side, with the door open; the protruding four inches of the shotgun made it immediately apparent to Officer Lawston that the object was subject to seizure.

It is well settled that incident to a lawful arrest officers are permitted to search for and seize without a warrant weapons and evidence of crime that are within the area of immediate control of the arrestee. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The justification depends as much on the need to disarm the arrestee as on the need to preserve evidence that will be used later on at trial. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 476, 33 L.Ed.2d 427 (1973). After Smith was arrested and the transport officer arrived on the scene, a search of Smith revealed that he had ten "nickel" bags of marijuana hidden inside his pants. Since the search was conducted incident to a lawful arrest and confined to an area within Smith's immediate control, the seizure of the drugs was lawful.

For the reasons stated above, the gun and the narcotics seized are admissible into evidence. The Motion to Suppress is DENIED.