Anthony R. HEMSLEY, Appellant,

v.

UNITED STATES, Appellee.

No. 86–1733.

District of Columbia Court of Appeals.

Submitted May 4, 1988.
Decided Aug. 18, 1988.

Robert H. Haas, Baltimore, Md., for appellant.

Saul M. Pilchen, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the briefs were filed, and Michael W. Farrell, Elizabeth Trosman, and Julieanne Himelstein, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK and FERREN, Associate Judges, and REILLY, Senior Judge.

FERREN, Associate Judge:

At a bench trial, the court found appellant Anthony R. Hemsley guilty of possession of phencyclidine (PCP) and marijuana. D.C.Code § 33–541(d) (1988 Repl.). Hemsley now appeals, contending the trial court erred in denying his pretrial motion to suppress the evidence of drugs upon which his convictions were based. We agree and reverse.

## I.

At the suppression hearing, the government presented the testimony of Officer Anthony Scarpine. He testified that on June 30, 1986, at approximately nine o'clock on a "warm night," he and his partner were driving in a marked police cruiser along the 1400 block of Quincy Street, N.W. Officer Scarpine observed a Cadillac, lawfully parked, with three occupants who apparently were conversing. He testified that the windows were rolled up, "there was an excessively large amount of smoke inside," and the engine was not running, leading Scarpine to believe the car's air conditioning was not on. Because he knew of high narcotics use and trafficking in the area, Scarpine thought the occupants of the car "were using narcotics." Officer Scarpine and his partner pulled up parallel to the Cadillac, at which point appellant, who was in the driver's seat, "immediately started the vehicle up, cut the wheels to pull away from the curb and put the vehicle in gear." A passenger in the car, Arthur Evans, "opened the door and attempted to leave." At that point, Officer Scarpine ordered appellant "to put the vehicle back in park" and ordered Evans to "remain inside." They both complied.

Officer Scarpine then asked appellant several times to roll down his window. Appellant eventually did so. The strong aroma of marijuana emanated from the car. Officer Scarpine looked into the car and observed on the lip of the ashtray a partially smoked hand-rolled cigarette. Appellant and the other occupants of the car were then placed under arrest. A cup containing four PCP-laced packets of marijuana was recovered from under the front seat.

Appellant's testimony at the suppression hearing did not differ significantly from that of Officer Scarpine, except in the following respects: Appellant testified that the car's engine had been on the entire time and that the air conditioning had been running. Appellant also denied putting the car into gear when the officers approached.

## II.

The motions judge ruled, and the government does not now dispute, that Officer Scarpine effected a *Terry*[1] stop at the time he ordered Evans to stay in the car and appellant to keep it parked, before he asked appellant to roll down the window. The question, then, is whether the officer at that time had a reasonable suspicion of criminal activity based upon "specific and articulable facts," as required before an investigative stop is permitted. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). We conclude he did not.

### A.

The officers, as they approached the Cadillac, at most observed: a car with three occupants parked on a warm summer night in an area where narcotics were abundant, with the windows rolled up and a good deal of smoke in the passenger compartment. The trial court expressly rejected Officer Scarpine's testimony that the engine and air conditioning were not running: "I don't believe that they're sitting there with the windows closed and no air conditioning on at 9 o'clock on June 30th of this year.... I don't believe that part of the officer's testimony, don't rely on that." Thus, the trial court effectively eliminated the reasonableness of any suspicion that might otherwise be attributable to the unusualness of smoking in a closed car on a warm summer night.

The officers were confronted by a scenario not unlike the one presented in *Jones v. United States*, 391 A.2d 1188 (D.C.1978). There, a police officer, driving alone in a police cruiser at 1:00 a.m. through an area where drug trafficking and robberies had recently been taking place, observed two men sitting in a parked car with the inside dome light on. One passenger was smoking a cigarette and, as the officer approached, made a quick movement as though he were trying to hide something under the seat. The officer called for backup, approached the car, and ordered the occupants out, after which he found mari-

**1.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20  L.Ed.2d 889 (1968).

juana on the front seat. We held in *Jones* that the *Terry* stop, which occurred when the officer commanded the occupants to leave the car, was unlawful because the officer lacked a sufficient basis to believe that "criminal activity was afoot." *Jones*, 391 A.2d at 1191. The marijuana seized as a consequence accordingly had to be suppressed. We summarized in *Jones:* "the officer seized the two men on the basis of suspicion, rather than on the specific and articulable facts necessary to justify a 'seizure.' In so doing, he violated the Fourth Amendment's proscription against unreasonable searches and seizures." *Id.*

■ The officers' observations in the present case offer nothing beyond the mere "suspicion" we rejected in *Jones*. Appellant's sitting with two others in a parked car with the windows rolled up and a lot of smoke inside "is not sufficiently suspicious —even in a 'high crime' area—to warrant an investigative seizure of the person." *United States v. Barnes*, 496 A.2d 1040, 1043 (D.C.1985). Such behavior, while somewhat suspicious, is capable of such a common, obviously innocent explanation— smoking tobacco—that a *Terry* stop was simply not justified without further indicia of a criminal undertaking. *See Barnes*, 496 A.2d at 1043.

### B.

The government cites another factor, however, emphasizing not only the closed, smoke-filled car in a high narcotics area but also, as the trial court stressed, the attempted "flight" of the occupants of the car. The officers, as they pulled parallel to the Cadillac, saw Evans open the door to leave and observed appellant putting the car in gear and turning the wheels as if to drive away. We agree: these actions obviously manifested the clear intentions of appellant and Evans to leave the scene. But we reject the government's characterization of these actions as attempts to flee implying consciousness of guilt.

■ As the government correctly points out, we have said in a host of cases that "flight from authority—implying consciousness of guilt—may be considered among other factors justifying a *Terry* seizure." *United States v. Johnson*, 496 A.2d 592, 597 (D.C.1985) (citation omitted). But not every effort to avoid the police implies a guilty conscience. We have stated that "[c]itizens have no legal duty to talk to the police," *In re D.J.*, 532 A.2d 138, 141 (D.C. 1987), and that "an attempt to evade the police, without more, is insufficient grounds to justify a *Terry* stop." *Id.* at 142; *see Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *Robinson v. United States*, 278 A.2d 458, 459 (D.C.1971).

As we noted in *In re D.J.*, the cases in this jurisdiction in which courts have construed flight to indicate a guilty conscience are cases in which "the accused reacted by immediately running from the police." *Id.* at 141 (citing *United States v. Bennett*, 514 A.2d 414 (D.C.1986) (appellant and companion "bolted" when police car arrived); *Lawrence v. United States*, 509 A.2d 614, 615 (D.C.1986) (appellant ran at sight of police car emergency lights); *Tobias v. United States*, 375 A.2d 491, 492 (D.C. 1977) (appellant began to run when police officer identified himself); *Franklin v. United States*, 382 A.2d 20, 21 (D.C.1978) (appellants fled in car after officer identified himself), *vacated in part on other grounds*, 392 A.2d 516 (D.C.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed. 2d 637 (1979); *Hinton v. United States*, 137 U.S.App.D.C. 388, 391, 424 F.2d 876, 879 (1969) (appellant "bolted" when police searched his companion)). In contrast, an unhurried attempt to leave—a "mere[ ] attempt[ ] to walk away"—implies no more than "a desire not a talk to the police," from which "[n]o adverse inference may be drawn." *In re D.J.*, 532 A.2d at 141; *see Barnes*, 496 A.2d at 1044 n. 9.

■ Here, there is no evidence that the car or its occupants moved very much at all. Officer Scarpine testified that, upon seeing the scout car "their motions were very quick," and that appellant "immediately" put the car in gear and cut the wheels away from the curb. But, he did not testify that appellant attempted to leave precipitously. Likewise, there is no

evidence that Evans, who never got out of the car, attempted to "bolt" rather than casually depart, since Officer Scarpine immediately ordered him to remain inside and Evans complied. It may be that, had the police officers not stopped appellant and Evans from leaving, they might have fled in a manner that invited a reasonable suspicion of a guilty conscience. But, as it was, appellant's and Evans' actions at most reflected a legitimate eagerness not to chat with the police; they did not ripen into flight. In the absence of any movement away from the scene, therefore, appellant's and his passenger's actions can hardly be deemed "flight from authority—implying consciousness of guilt." *Johnson*, 496 A.2d at 597. Even when added to the "suspicious" circumstances the officers observed, appellant's and Evans' unhurried attempts to leave were insufficient, *see In re D.J.*, to elevate the officer's suspicion to a reasonable belief that "criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884.[2]

### C.

On cross-examination Officer Scarpine testified that he did not observe the car parked illegally, had not seen any traffic violation committed, and did not observe appellant or the car's passengers engaging in any illegal activity. Nor was he able to detect the presence of drugs in the car until after he had "seized" appellant by ordering him to keep the car parked and to roll down the window. On the record before us, therefore, we conclude that the officer lacked the "specific and articulable facts" required to support a seizure.

We noted in *Barnes*, 496 A.2d at 1044–45, that

[i]n the years since *Terry*, ... the [Supreme] Court in case after case of a street encounter has had to resolve the "tensions involved," *id.* [392 U.S.] at 10, 88 S.Ct. at 1874, in protecting both the public's interest in safety and the individual's right of personal security.

It would appear that, in these cases, the Court increasingly has opted in the favor of public safety. It has done so by electing to raise the threshold of what is meant by a "seizure," rather than by deciding to lower the standard for the "minimal level of objective justification [required] to validate the detention or seizure." [*Immigration and Naturalization Service v.*] *Delgado*, [466 U.S. 210, 217,] 104 S.Ct. [1758,] 1763 [80 L.Ed. 2d 247 (1984)]. In sum, in the interest of permitting the police to do their job, consistent with individual rights, the Court apparently h.. found it preferable to deem nonintimidating police questioning a "consensual encounter," not a seizure, rather than to risk justifying seizures based on marginally suspicious circumstances which are capable of innocent explanation.

Therefore, under the circumstances presented here, which were consistent with both an innocent explanation and potential criminal activity, the police had every reason to investigate by asking "nonintimidating" questions, as the police did effectively in *Barnes*. But, instead, as in *Jones*, the police effected a seizure before they had a reasonable enough suspicion of criminal activity to do so under *Terry*. Accordingly,

---

2. This case is distinguishable from *United States v. Johnson*, 496 A.2d 592 (D.C.1985), in which we held that the driver's flight from a parked car when police approached was among the reasonable articulable facts upon which the officers based a lawful *Terry* stop of the car's other occupants. In *Johnson*, the driver of the car did not merely open the door and attempt to leave, or start the car as if to drive away. Rather, when the officers said to the driver, who was exiting the car, "come here, police officer," the driver ran from the car to the doorway of a nearby house. *Id.* at 594.

We note, further, that in *Johnson*, before the driver's flight, the officers had observed circumstances not unlike those in this case: an unfamiliar Cadillac, parked at 10:30 p.m. in an area known for frequent robberies, with three men inside. The officers' suspicions were aroused because the car was beat-up in the way cars used in robberies in that area frequently were, and because the officers knew that robbers in that area often worked in groups of two or three. Nonetheless, the lead opinion stated unequivocally: "We reaffirm our conclusion that the police officers had no legitimate basis for detaining and searching respondent before the driver's flight." *Id.* at 595.

the trial court erred in denying appellant's motion to suppress. Because the evidence of PCP and marijuana was therefore inadmissible *see In re D.J.; Jones*, we must

REVERSE AND REMAND.

REILLY, Senior Judge, dissenting:

Granted that ever since *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the line that the Supreme Court has drawn between the circumstances which justify a policeman stopping a stranger for investigation, and those which prohibit him from detaining a person who refuses to answer a question or a request for identification, is a shadowy one, I am unable to agree with the holding that the challenged stop here overstepped the bounds of police conduct set by the *Terry* opinion or by our decisions which have attempted to apply it.

The majority opinion points out that as the government no longer disputes that a *Terry* stop was effectuated when the police officer ordered one of the passengers (Evans) to stay inside the car and appellant to keep it parked, such action was proper only if the officer at the time had a reasonable suspicion of criminal activity based upon "specific and articulable facts." [1] I accept this premise, but am baffled by the conclusion that grounds for such reasonable suspicion were lacking here.

The transcript of the suppression hearing discloses that the particular criminal activity the officer suspected was that the car's occupants were smoking narcotics. I submit that in the circumstances, such suspicion was highly rational.

In summing up at the request of the motions judge the reasons for his actions, the officer not only mentioned that the car was parked in a "favorite spot" in a narcotics area when he first saw the vehicle, but also explained:

[T]he second thing that aroused my attention was the fact that there were three subjects in there. It was warm and all four windows were up.

As I got closer I was able to tell that the motor in the vehicle was off and that there was a large amount of smoke inside the vehicle. To be perfectly honest at that time I believed that they were sitting inside the vehicle smoking narcotics.

I stopped my vehicle, and when I stopped my vehicle and they attempted to leave, I pulled away from the curb and exited from the rear of the vehicle. This sort of strengthened my feelings that there was something taking place inside the vehicle.

According to the majority, these observations by the officers did not constitute grounds for reasonable suspicion, for the behavior of the occupants of the car was capable of such a "common, obviously innocent explanation—smoking tobacco." It seems to me, however, that this very inference is unreasonable, albeit within the realm of possibility. Irrespective of air conditioning, the confines of a sedan are such that it would be most unusual for its occupants, except in severe cold weather, to indulge in cigar or tobacco cigarette smoking without opening at least one or two windows. But if they were smoking some illegal substance, obviously it would be prudent to avoid detection by keeping the windows closed. Even defense trial counsel appeared to recognize that if the officers had indeed seen a smoke filled car with all its windows rolled up, their actions were justified, for his line of rebuttal was to present evidence showing that darkness of night would have prevented the officers from perceiving any smoke inside the car until the appellant opened his window.[2]

1. *Terry, supra*, 392 U.S. at 21, 88 S.Ct. at 1880. *See also Michigan v. Chesternut*, — U.S. —, 108 S.Ct. 1975, 1979 (1988); *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed. 2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), for the proposition that no "seizure" occurs within the meaning of the Fourth Amendment, unless in view of all the circum-

stances a reasonable person would have believed that he was not free to leave.

2. The motions court was plainly not impressed by this testimony, for the incident occurred in early twilight, *i.e.*, 9:00 p.m. on June 30th, shortly after the summer solstice.

We have observed in several other decisions that the behavior of an individual which arouses the suspicion of a policeman should not be discounted merely because it can be construed as innocent. *See, e.g., United States v. Bennett*, 514 A.2d 414, 416 (D.C.1986) ("Even if each specific action of appellee was ... susceptible of an explanation consistent with innocence of drug dealing, the observing police officer may see a combination of facts that make out an articulable suspicion"); *Tobias v. United States*, 375 A.2d 491, 494 (D.C. 1977) ("the mere possibility of innocent explanations would not suffice to diminish the likelihood of illegality appearing ... to prudent men possessing the knowledge and experience of the officers in the case"); *Smith v. United States*, 295 A.2d 64, 66 (D.C.1972), *cert. denied*, 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973).

While the setting of the detention here does indeed resemble the situation in *Jones v. United States*, 391 A.2d 1188 (D.C.1978), which the majority cites, I think it significant that the degree of intrusion constituting the "seizure" in that case was considerably greater than the conduct now challenged. There the policeman ordered the occupants of the parked car to get out. This enabled him to inspect the interior of the car and uncover a cache of marijuana.

In contrast, the detention here merely consisted of an order to one passenger to stay inside the car and for the driver to remain parked. All that the officer then did was to request that a window be rolled down so that he could talk to the driver. Once the window was opened, releasing the acrid odor of smoke produced by marijuana laced with PCP, there was probable cause to arrest.

It is by no means clear that appellant himself knew the police had ordered his car to stop, for he denied that he had put the vehicle in starting gear. Apparently because the windows were rolled up, he did not hear any of Officer Scarpine's verbal instructions; he testified that he became aware of the latter's desire to question him only when the officer rapped upon the closed window. Thus, we cannot be sure that appellant at any time inferred that he was not free to leave until the officers had completed his instruction, notwithstanding the officer's testimony that this was his intention.[3]

In my opinion, the degree of intrusion or restraint imposed by the police is always a relevant factor in challenged detention cases. The Supreme Court observed in its most recent pronouncement on this subject:

> Both petitioner and respondent, it seems to us, in their attempts to fashion a bright-line rule applicable to all investigatory pursuits, have failed to heed this Court's clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account "all the circumstances surrounding the incident" in each individual case.

*Chesternut, supra* note 1, 108 S.Ct. at 1979 (quoting *Delgado, supra* note 1, 466 U.S. at 215, 104 S.Ct. at 1762).

Accordingly, it is my view that if we consider all the circumstances in this case, including the minimal restraint upon appellant, we should affirm the denial of the suppression motion for the reasons expressed by the motions court in the opinion accompanying this order.

---

**3.** In *Chesternut, supra* note 1, the Supreme Court said:

> Of course, the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct *only to the extent that that intent has been conveyed to the person confronted.*
> 108 S.Ct. at 1980 n. 7 (emphasis supplied).