Donald L. HOOD, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CM–225.

District of Columbia Court of Appeals.

Submitted May 17, 1995.

Decided June 29, 1995.

John T. Kenney, New York City, for appellant.

Leanne Shaltis, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III and Peter H. White, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY and RUIZ, Associate Judges.

WAGNER, Chief Judge:

Following a stipulated trial, appellant, Donald L. Hood, was convicted of carrying a pistol without a license (D.C.Code § 22–3204 (1989 Repl.)), possession of an unregistered firearm (D.C.Code §§ 6–2311 & –2376 (1989 Repl.)), and possession of unregistered ammunition (D.C.Code §§ 6–2361 & –2376 (1989 Repl.)). The sole question presented on appeal is whether the trial court erred in denying appellant's pre-trial motion to suppress tangible evidence, *i.e.*, the gun and ammunition which the police recovered from a small leather pouch found inside appellant's car.

The resolution of this issue depends upon whether the particular facts surrounding the search and seizure provided the level of suspicion necessary to support the investigatory stop and search for weapons by the police inside the bag retrieved from appellant's vehicle under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). We hold that the search was unreasonable under the circumstances. Accordingly, we reverse.

## I.

### A. *The Evidence*

Officer Eugene Norris, a Metropolitan Police officer, testified at the pre-trial hearing on the motion to suppress that in the early morning hours of May 16, 1993, he and his partner, Officer Juan Hernandez, went to the Fourth District police station in response to a radio dispatch requesting an escort home for a "young lady," who was reported to be an officer. At the station, they talked with Isabel Coates, a dispatcher, who told them that she had requested the escort because her former boyfriend, appellant Hood, was parked outside of her mother's home, where she was staying, when she arrived there at 2:00 a.m. According to Officer Norris, Ms. Coates told the officers that she was afraid of Mr. Hood and that she did not trust him because he had threatened her during an argument the previous day. She also told the officer that Hood had been harassing her and that he was "following her at that time." She explained that she did not want any problem around her mother's house and that she wanted the officers to make sure she entered the house safely with her child or children.[1]

The officers followed Ms. Coates in their police car as she drove the short distance to her mother's house in the 1500 block of Van Buren Street, N.W. When they reached the house, according to Officer Norris, Ms. Coates parked, gathered some belongings from her car, and pointed out an Audi automobile parked on the other side of an alley about two houses away. Ms. Coates then went up the steps and entered the house, while the officers approached the Audi in which appellant was seated.

Officer Hernandez approached the vehicle on the driver's side, while Officer Norris went to the passenger side. According to Officer Norris, they intended only to calm the man down and to ask him to move on. Both officers shined their flashlights inside the Audi to make sure that Hood was not reaching for anything that would endanger them. When Officer Hernandez "felt safe," he tried to get appellant to roll the window down or get out of the car. When Mr. Hood hesitated, Officer Norris suspected that he was hiding something. When Hood's car door opened, Officer Hernandez told his partner that he smelled alcohol, and he took Mr. Hood out of the car and to the rear of the vehicle. Officer Norris described Hood's demeanor during the encounter as calm, "mellow," non-combative, and inquisitive about the officers' purpose.

Officer Hernandez frisked appellant, and Officer Norris searched inside the car. Officer Norris explained that "our instinct is if someone hesitates or moves around inside of the car to check the immediate area for weapons for our safety." Officer Norris found a small leather bag between the bucket seats to the right of the driver's seat. He felt the bag with a crushing motion and concluded that it seemed to contain a weapon. The officer asked Mr. Hood if he had a weapon in the bag, and appellant responded that he had a weapon which he used while working as a security guard. Ms. Coates had not told the officers that appellant was a special police officer or that he might have a weapon.[2] Officer Norris seized the weapon and arrested Hood.

Ms. Coates testified at the suppression hearing that she had asked the police to escort her home, but she denied that she told them that Hood had threatened her. She

---

1. The officer could not recall whether Ms. Coates had one or two children with her.

2. Officer Norris testified that they were upset that Ms. Coates had not informed them that Mr. Hood had a weapon so that they would know in advance "what we were getting ourselves into."

said that she only explained to the officers that she and Hood had an "ugly" argument that day and that she did not want a confrontation in front of her mother's house. She testified that she described Hood's car for the police, but she denied pointing it out to them on the scene. On cross-examination, Ms. Coates indicated that she had lived with appellant previously and that they were still friends.

## B. *The Trial Court's Ruling*

To the extent that Officer Norris' testimony conflicted with Ms. Coates' testimony, the trial court credited Officer Norris' version of the events and found the facts consistent with his testimony. The trial court concluded that the police conduct in making the stop and the search was reasonable under the circumstances and that the officers had an articulable suspicion which justified the limited search of those areas of the car where a weapon might be hidden. Therefore, the court denied the motion to suppress evidence.

## II.

Appellant argues that the trial court erred in denying the motion to suppress because the police had no basis for a reasonable belief that he was armed and dangerous when they frisked him and searched his automobile and the leather pouch which they found inside. The government contends that the totality of the circumstances justified the police in conducting a protective search of appellant's vehicle and the bag for weapons during the course of this investigatory stop.[3]

■ It is well established that the police may detain a person briefly on less than probable cause provided the officer has a reasonable suspicion based on specific articulable facts that the individual is involved in criminal activity. *United States v. Sokolow,*

490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1988); *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *Peay v. United States,* 597 A.2d 1318, 1319–20 (D.C.1991) (en banc). A minimal level of objective justification is required to support such an investigatory stop, which is "less demanding than that required for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585; *accord, Holston v. United States,* 633 A.2d 378, 381 (D.C.1993); *Peay,* 597 A.2d at 1320. In *Terry,* the Supreme Court upheld the validity of a protective search of a suspect for weapons during the course of an investigatory stop where the officer had reasonable grounds to believe that the suspect was armed and presently posed a danger to himself or others. 392 U.S. at 30, 88 S.Ct. at 1884–85. Subsequently, the Supreme Court held that once the police validly stop the suspect of a crime under *Terry,* they may conduct a protective search of the passenger compartment of his vehicle "limited to those areas in which a weapon may be placed or hidden ... if the officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long, supra,* 463 U.S. at 1049, 103 S.Ct. at 3481 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). The government relies upon the principles distilled from these cases in contending that the circumstances in this case justified the protective search of a container inside appellant's vehicle during a *Terry* stop.

■ In reviewing the trial court's ruling denying the motion to suppress, our role is "to ensure that the trial court had a substantial basis for concluding that no constitutional

---

**3.** The government did not argue in the trial court, and does not contend on appeal, that the warrantless arrest was based on probable cause to believe that appellant had violated the felony threats statute, D.C.Code § 22–2307 (1989 Repl.). *See* D.C.Code § 23–581(a)(1)(A). The threats statute prohibits the utterance of words of "a nature as to convey fear of serious bodily harm or injury to the ordinary hearer." *United*

*States v. Baish,* 460 A.2d 38, 42 (D.C.1983); *see also United States v. Young,* 376 A.2d 809, 812 (D.C.1977). Here, the police did not recall specifically what Ms. Coates reported about the threats, and the trial court could not, and did not, make a finding as to their nature. Thus, we have no occasion or record basis upon which to determine whether probable cause existed as a result of the reported unspecified threats.

violation occurred." *Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991). We conclude that the circumstances of this case do not support the trial court's conclusion that the officers possessed an articulable and objectively reasonable belief that appellant was armed and posed a danger when they searched his automobile. *See Long, supra,* 463 U.S. at 1051, 103 S.Ct. at 3481–3482.

The facts known to the officers before they stopped appellant and searched his car were the following: (1) he had threatened Ms. Coates, his former girl friend, the previous day; (2) he had followed her to her mother's home in the early morning hours and parked outside, apparently awaiting her arrival; (3) Ms. Coates had expressed her fear of appellant to the officers and requested a police escort home; (4) appellant hesitated when the police asked him to open the car window or door; and (5) the officers smelled alcohol on appellant's breath. On these facts, the officers, no doubt, had a duty to investigate. However, the police are not at liberty to conduct an automobile search every time they make an investigative stop. *Long, supra,* 463 U.S. at 1049, 103 S.Ct. at 3480–81.

" 'The sole justification of the [*Terry* ] search ... is the protection of the police officer and others nearby....' " *Long, supra,* 463 U.S. at 1049–50 n. 14, 103 S.Ct. at 3481 n. 14 (quoting *Terry, supra,* 392 U.S. at 29, 88 S.Ct. at 1884). Moreover, "[a] search for weapons in the absence of probable cause to arrest ... must ... be strictly circumscribed by the exigencies which justify its initiation." *Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882. The search of the passenger compartment limited to areas where a weapon may be hidden is permissible when the police officer "possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long,* 463 U.S. at 1049, 103 S.Ct. at 3481 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). Facts which would support the conclusion that appellant was dangerous and might have a weapon were absent here. Neither the facts provided the officers by Ms. Coates nor appellant's conduct which the police observed provided objective justification for concluding that he might be armed and dangerous at the time.

First, the argument between Coates and appellant occurred the day before the police encounter. Although Ms. Coates told the officers that appellant had threatened her then, she did not even describe the nature of the threats. There is no evidence that their confrontation involved a weapon of any kind. The officer candidly admitted that he did not learn that appellant was a special police officer, and therefore might possess a weapon, until after he had searched the vehicle, seized the pouch, and discovered the outline of a gun. It is fundamental that the facts upon which the search is based must be within the officer's knowledge before the search is conducted. *See Brown, supra,* 590 A.2d at 1013. Prior to the search, the officers had obtained no information from Ms. Coates or appellant which would lead them to conclude that he might have a weapon.

Second, appellant's behavior, as described by the officer who testified at the hearing, belied any suggestion that appellant's manner was threatening when they approached him. The officer described him as calm, "mellow," non-combative, and inquisitive. Third, both officers shined their flashlights into appellant's car prior to asking him to step out of the car, and neither officer saw anything that would indicate that appellant was armed and dangerous. Fourth, the officers saw nothing which indicated that appellant was then involved in criminal activity.[4] While one might reasonably suspect that appellant may have been bent upon some mischief involving his former girl friend, who by the time of the police encounter was safely in the house, the officers did not see any suspicious objects nor observe any furtive movements which might indicate the presence of a weapon. Fifth, although Officer Hernandez remarked about the odor of alcohol on appel-

4. At the time of this incident, the anti-stalking law which prohibits a person from willfully, maliciously and repeatedly following another, had not gone into effect. The law became effective on November 17, 1993. D.C.Code § 22–504(b) (1995 Supp.).

lant's breath during the encounter, Officer Norris, the only officer to testify at the hearing, testified that he could not say that appellant appeared to be intoxicated. There was no other testimony to support any heightened fear of dangerousness resulting from the alcohol on appellant's breath which would justify a protective search for weapons inside the car.

The reason provided by the officer for the search was that appellant hesitated initially when asked to roll down the window or step out of the car. This factor alone is not sufficient to give rise to the level of articulable suspicion necessary for an intrusive search into a vehicle where the circumstances provide no other present evidence of the occupant's dangerousness.

■ In judging the reasonableness of the police action, we must, of course, look at the totality of the circumstances. *See Brown, supra,* 590 A.2d at 1014. Even taken together, the facts disclosed by the evidence and found by the court fail to provide a basis for the officer to believe that appellant was dangerous and might gain immediate control of weapons. *See Long, supra,* 463 U.S. at 1045–52, 103 S.Ct. at 3479–82. The officers had no knowledge of facts prior to the search from which they might reasonably infer that appellant possessed a weapon.

While each case of this type must be decided on its own factual circumstances, it is useful to examine the type of facts which led the Supreme Court to determine in *Long* that the police did not act unreasonably in conducting a protective search of the suspect's vehicle for weapons before allowing him to reenter it. In *Long,* the police officers observed the defendant drive at an excessive rate of speed and swerve into a ditch at a late hour in a rural area. When the officers stopped to investigate, Long met the deputies at the rear of the car. *Long, supra,* 463 U.S. at 1035, 103 S.Ct. at 3473. He did not respond initially to the deputy's request that he produce his operator's license, and he failed to produce the registration for the vehicle. When Long started to walk away from the officers toward the rear of the

opened car door, the officers followed him, and they observed a large hunting knife on the floorboard of the driver's side of the car. 463 U.S. at 1036, 103 S.Ct. at 3473–74. Only after discovering the knife did the officers frisk Long. They also looked into the vehicle with a flashlight and found an opened pouch which appeared to contain marijuana. *Id.* Observing that the issue is always the reasonableness of the governmental intrusion of the citizen's personal security, the Supreme Court held that it was not unreasonable for the officers to assure that no other weapons were present in the car before permitting Long to reenter it. *Id.* at 1051, 103 S.Ct. at 3481–82.

In contrast, in this case, appellant was not seen with nor reported to have a weapon. He was not observed by any officer committing an offense, as Long was. Unlike Long, appellant responded to questions; he was apparently not noticeably intoxicated; and he was calm and cooperative when the police talked to him while he was inside the car. Although the government points out that a gun was recovered from appellant ultimately, "this court has previously held that the end result can never justify the constitutionality of the circumstances leading to a seizure of evidence." *Powell v. United States,* 649 A.2d 1082, 1083 (D.C.1994).

■ The search of the passenger compartment of a suspect's automobile under the principles enunciated in *Long* require preliminarily a valid *Terry* stop. *Turner v. United States,* 623 A.2d 1170, 1171 (D.C.1993). Under *Terry,* the police may detain briefly an individual provided they have an "articulable suspicion" that the person is engaged in criminal conduct. *Brown, supra,* 590 A.2d at 1013. The greater the police intrusion, the greater the showing required. *Id.* Thus, circumstances which may be sufficient to allow the police to stop an individual briefly to make inquiry and to obtain more information may not be sufficient to justify ordering the person out of his vehicle. *See Jones v. United States,* 391 A.2d 1188, 1190–91 (D.C. 1978).[5] In this case, the officers may well

---

**5.** In *Jones,* the police saw two men sitting in an automobile at an early morning hour in an area

where robberies and drug activity had been occurring. The officer had no specific report of a

have exceeded the limits of the intrusion justified under *Terry* when they ordered appellant out of the vehicle with no more than a report that he made threats against Ms. Coates the previous day, waited outside of her home in the early morning hours, and initially hesitated when the police commanded him to roll the window down or get out of the car.

In any event, assuming the validity of the police conduct in ordering appellant out of the vehicle, the officers conducted a search of the container inside the car without specific and articulable facts from which it could be inferred reasonably that appellant was armed and presently dangerous. *See Long, supra*, 463 U.S. at 1047, 103 S.Ct. at 3479–80; *Terry, supra*, 392 U.S. at 27, 88 S.Ct. at 1883. Accordingly, we conclude that the search and seizure violated the Fourth Amendment's proscription against unreasonable searches and seizures.

Therefore, the order appealed from hereby is reversed with instructions to the trial court to grant appellant's motion to suppress tangible evidence.

crime. When the officer approached the vehicle in a darkened patrol car, one of the men in the car appeared to hide something under the seat. The police immediately ordered the men out of the car. While observing that the circumstances supported a brief inquiry of the occupants of the vehicle, the court held that these limited facts did not provide a basis for the seizure under the *Terry* standard. *Jones, supra*, 391 A.2d at 1190–91. The court determined that "the officer seized the two men on the basis of suspicion, rather than on the specific articulable facts necessary to justify a seizure." *Id.*