Terrence E. PRICE, Appellant,

v.

UNITED STATES, Appellee.

Arnold D. COLQUITT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 79–1218, 80–174.

District of Columbia Court of Appeals.

Argued Nov. 5, 1980.

Decided March 27, 1981.

Jeffrey C. Hines, Washington, D. C., appointed by this court, for appellant Price.

B. Jenkins Middleton, Washington, D. C., appointed by this court, for appellant Colquitt.

A. Carlos Correa, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. and John A. Terry, Melvyn H. Rappaport, J. Alvin Stout, III and Charles R. Richey, Jr., Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KERN and GALLAGHER * and FERREN, Associate Judges.

KERN, Associate Judge:

 Appellants Price and Colquitt were convicted at separate jury trials for carrying a pistol without a license (D.C. Code 1973, § 22–3204), possession of an unregistered firearm (Art. 51, Sec. 1, Police Regulations of the District of Columbia), and possession of unregistered ammunition (Art. 53, Sec. 2, Police Regulations of the District of Columbia).[1] Appellant Colquitt was also convicted of possession of marijuana (D.C.Code 1973, § 33–402).[2] This consolidated appeal challenges the trial court's denial of appellants' pretrial motions to suppress statements and evidence on the ground that the warrantless seizure of evidence which led to their arrest was conducted without probable cause.[3]

At about 2 p. m. on March 29, 1979, officers of the Metropolitan Police Drug Unit observed appellants sitting in the front seat of a car which was parked illegally in an alley located in a neighborhood of high narcotics activity. As the officers approached in a marked police cruiser, they observed Colquitt, sitting in the passenger seat, bend forward and immediately come back up. The officers pulled up to the car and as they got out of the cruiser, both appellants got out of the passenger side of their car, closed the door and stood by the car. One of the police officers looked through the car window and saw a folded

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. The registration regulations were incorrectly cited, having been repealed in 1976. The information charging Price was amended to reflect the essentially identical provision of D.C.Code 1978 Supp., §§ 6–1811, –1861. The information charging appellant Colquitt was never amended.

2. Price was acquitted on a possession of marijuana charge contained in his information.

3. Appellant Colquitt's claim that his conviction should be reversed due to an error in the statutory citation in the information is without merit. The error did not prejudice him in our view since he was apprised of the charge against him although it derived from a different statutory provision. *Wittenberg v. United States,* D.C.App., 366 A.2d 128 (1976); Super.Ct.Cr.R. 7(c).

We also reject appellant Price's claim that there was insufficient evidence to support his conviction on the gun related charges. Reviewing the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact, we conclude that the evidence presented at trial reasonably permitted a finding of guilt beyond a reasonable doubt. *Byrd v. United States,* D.C.App., 388 A.2d 1225, 1229 (1978).

manila "coin" envelope on the floor. The officer, based on his own experience in drug enforcement, "suspected the envelope contained contraband, probably narcotics." When the officer opened the car door and reached inside to seize the envelope, he saw a gun sitting on top of some other articles on the floor on the passenger side of the front seat. The gun and envelope were seized and appellants were arrested.[4]

■■■ Appellants argue that under the Fourth Amendment, the police were required to obtain a warrant before entering the car to seize the envelope and failure to do so required suppression of the seized evidence at trial. The Fourth Amendment warrant requirement is not absolute, however, and warrantless searches and seizures are permitted where there is a finding of probable cause and exigencies of the moment require prompt action. In this case, exigencies were created by the inherent mobility of the automobile and the easily destructible nature of the evidence. When combined with the diminished expectation of privacy commonly attached to an automobile, the "auto search" exception to the Fourth Amendment would permit the warrantless entry of the car if probable cause is demonstrated. *E. g., United States v. Whitfield*, 203 U.S.App.D.C. 102, 106–07, 629 F.2d 136, 140–41 (1980). We conclude under the circumstances of this case that the officer had probable cause to believe that the manila envelope contained contraband and thus was permitted under the Fourth Amendment to enter the car and seize the article.[5]

■■■ The determination of probable cause is an inexact judgment. The usual test holds that probable cause exists where "the facts and circumstances within their [the police officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). In this case, as in others involving warrantless searches and seizures, "[t]he troublesome line . . . is one between suspicion and probable cause. That line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all circumstances." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Our conclusion that the officer in this case acted upon probable cause is based on an analysis of the events and surrounding circumstances leading up to the officer's decision to enter the car and seize the manila envelope.

The arresting officer, Officer Hill, first became suspicious when he saw the appellants sitting in the car parked in the alley. That alley was on his regular patrol[6] and in any given tour of duty he passed through that alley anywhere from one to ten or twenty times. (Record at 8, 43–44.)[7] The mere presence of the appellants and the car in that alley was highly suspicious from the officer's perspective for three reasons: (1) despite his frequent patrol of that alley, he had never seen a car parked there before (Record at 9), (2) the alley was a narrow one, not designed to accommodate parked cars (Record at 9), and (3) narcotics users in that neighborhood had recently taken to using parked cars as a place to inject drugs following the closing of a local rooming house notorious for such activity. (Record at 33.) Based upon this experience, the officer testified at the suppression hearing

---

4. The "coin" envelope contained marijuana; other envelopes also containing marijuana were later found in Colquitt's jacket.

5. Once the officer's entry into the car was justified, the gun was properly seized under the "plain view" exception to the Fourth Amendment warrant requirement. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

6. The officer had been working principally in that area for six years. (Record at 44.)

7. Record references refer to Supplemental Record filed in this court on January 18, 1980 of the suppression hearing held on June 28, 1979.

that he was sufficiently suspicious to want to investigate the situation and perhaps ask the appellants to "move on." (Record at 42, 49.) Based on those suspicions, Officer Hill turned his marked police cruiser into the alley.

As the officer drove toward the car containing appellants, his suspicion was further increased by the action of Colquitt, who was seated on the passenger side. The officer saw Colquitt bend forward, bringing the upper part of his body down in front of him and then come immediately back up.[8] (Record at 10.) This gesture was important in shaping Officer Hill's conclusion that the seized envelope contained narcotics. Although a "furtive gesture" is not sufficient standing alone to provide probable cause to believe a crime is being or has just been committed, it is a circumstance properly to be considered. "The significance of appellant's movement is that it was made simultaneously with the realization that he was about to be halted by the police. The police officer, therefore, was reasonably justified in suspecting that appellant was attempting to conceal contraband or the instrumentality of a crime." *McGee v. United States*, D.C.App., 270 A.2d 348 (1970).

The police cruiser stopped near the appellant's car and the police officers got out of the cruiser. The appellants simultaneously exited their car, both from the passenger side, and shut the door. (Record at 10, 43). That act added to the officer's suspicion both because the appellants left their car immediately following the "furtive gesture" (Record at 53), and because Price slid across from the driver's seat in order to exit from the passenger side and stand between the police and the car rather than merely stepping out on his side of the car.[9] (Record at 10, 33–34.)

Under all these circumstances Officer Hill testified that it was no longer "just a car parked" [*sic*]. (Record at 48.) The officer approached the car and stood near one of the appellants. After Colquitt made the motion, Officer Hill determined to look in the car because he felt something was "afoot." (Record at 53, 65.) He stated he "was very curious about what had been put down. I knew something had been put down." (Record at 32.) The officer said he was "looking down through the window at the floor, I wanted to see what Colquitt had done that—when he went forward." (Record at 11.) Focusing his attention on the floor of the passenger side of the front seat where Colquitt had made his suspicious movement, Officer Hill spotted the manila "coin" envelope.

It must be emphasized that the envelope was located at the very point where Colquitt's furtive gesture had been directed. The manila "coin" envelope, although a common object, is necessarily colored by the circumstances surrounding its discovery. Officer Hill testified that based on his eight years of experience dealing with narcotics offenses he concluded that the envelope contained narcotics. He noted that he had been involved in hundreds of drug related arrests and in perhaps 20% of those arrests these small manila envelopes were involved. (Record at 14.) He stated that: "Most every time I had a narcotic arrest involving one of those envelopes, it would be the carrier of the narcotics that I was seizing . . . ." (Record at 15.) In *Bell v. United States*, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86 (1958), the court comments:

> An officer experienced in narcotics traffic may find probable cause in the . . . appearance of paraphernalia which to the lay eye is without significance. His action is not measured by what might be probable cause to an untrained civilian passerby . . . . The question is what constituted probable cause in the eyes of the reasonable, cautious and prudent police

---

**8.** Another officer accompanying Officer Hill testified that he saw Colquitt "look up at us as we were coming up the alley and reach down quickly . . . between his legs as though he were attempting to put something down or hide something." (Record at 103.)

**9.** The record indicates that there were no obstructions in the alley which might have prevented Price from getting out on the driver's side of the car. (Transcript of trial of Appellant Price, October 12, 1979 at 21–22.)

officer under the circumstances of the moment.

The problem ... is one of probabilities—not certainties and not necessarily eventual truth .... [R]oom must be allowed for some mistakes, so long as the mistakes are those of reasonable men, acting on facts leading sensibly to their conclusions of probability.

■ We emphasize that we do not say that the mere presence of the manila "coin" envelope created probable cause to believe it contained narcotics merely because it is frequently used for that purpose. Rather, we emphasize in concluding the officer had probable cause to seize this particular envelope as containing drugs (1) the suspicious circumstances in which the appellants and the envelope were discovered, (2) the furtive movements by appellants upon encountering the police, and (3) the location of the envelope, *viz.*, not in the back seat or glove compartment, but at the exact spot where Colquitt's furtive gesture suggested an object was being placed. We note further that this episode involving the envelope took place in an area notorious for a high degree of narcotics use, not at a bank or at the shop of a stamp dealer. While the police officer's experience with such envelopes and the character of the surrounding neighborhood are *not* in and of themselves sufficient to create probable cause, they are significant factors which when taken with the other factors set forth above cannot be ignored while evaluating the reasonableness of the police officer's response.

The cases relied on by appellants do not guide us to a contrary finding. In *Arrington v. United States*, D.C.App., 382 A.2d 14 (1978), the seizure of a common item, a brown paper bag, from under a car seat was held to have been without probable cause. In that case, however, the court noted that

the investigation began as the result of a routine traffic stop which lacked the suspicious surrounding circumstances present in this case. In addition, the police officer making the seizure had no special experience with and knowledge of narcotics offenses which would give him a basis for attributing a special use to an ordinary object. Likewise, in *Christmas v. United States*, D.C.App., 314 A.2d 473 (1974), the police had no special narcotics training, the seized article was not found at the point where the furtive gesture which aroused suspicion would have put it, the investigation was in relation to a suspected stolen car, and the police officer expressly stated that he had no belief that the seized article contained prohibited drugs.

*Jones v. United States*, D.C.App., 391 A.2d 1188 (1978), relied on by appellants, is inapposite. The narcotics seized in that case were suppressed because they were observed in plain view only after the prior illegal seizure of the appellants, who had been ordered from their car.[10]

We note that in considering the relevant cases in this jurisdiction which are fact specific and which the parties cite to us to support their position:[11]

[P]recedent is obviously helpful, but courts should not enmesh themselves in a dissection of the facts of other cases in an effort to bring each case under consideration definitively within or without what is then deemed controlling precedent .... [T]wo cases are seldom sufficiently alike for the first to be an absolute binding precedent for the second. [*Arrington v. United States*, D.C.App., 311 A.2d 838, 839–40 (1973).]

We conclude that under the particular circumstances of this case, the officer made a reasonable inference that the manila envelope he observed in the car contained

---

10. In *United States v. Page*, D.C.App., 298 A.2d 233 (1972), also relied upon by appellants, the court held the circumstances did not even reach the level required to justify a *Terry* stop, much less probable cause.

11. Decisions of this court are also cited by the government to demonstrate probable cause ex-

isted. *Thompson v. United States*, D.C.App., 368 A.2d 1148 (1977); *Munn v. United States*, D.C.App., 283 A.2d 28 (1971); *Peterkin v. United States*, D.C.App., 281 A.2d 567, *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1971).

contraband. Thus, he had probable cause to justify his warrantless entry of the car and his subsequent seizure of the envelope and then of the gun found in plain view. The trial court was therefore correct when it denied the motions to suppress and the judgment of conviction must be

*Affirmed.*[12]

---

12. Since we conclude that the seizure was based on probable cause and affirm the denial of the suppression motions, we need not reach the issue of appellant Colquitt's standing as a mere passenger in the car to raise a Fourth Amendment challenge.