583 A.2d 986 (1990)
In the Matter of T.T.C., Appellant.
No. 89-520.
District of Columbia Court of Appeals.
Argued March 21, 1990.
Decided November 14, 1990.
*987 Wallace J. Mlyniec, Washington, D.C., appointed by this court, for appellant.
Charlotte M. Brookins, Asst. Corp. Counsel, with whom Herbert O. Reid, Acting Corp. Counsel, and Charles L. Reischel, Washington, D.C., Deputy Corp. Counsel, were on the brief, for appellee.
Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.
ROGERS, Chief Judge:
Appellant T.T.C. appeals from an adjudication of delinquency based on his possession of cocaine in violation of D.C.Code § 33-541(a) (1988 Supp.). He contends that the trial judge erred in denying his motion to suppress the drugs found in the car in which he was a passenger since the evidence was obtained during an illegal seizure. We agree and reverse.

I
As a result of seeing a man hand a small white object to another man at the corner of First Street and Rhode Island Avenue, N.W., on January 18, 1989, at about 9:45 p.m., Officer Bradley Beldon and two other undercover police officers followed the car which the first man had entered. When the car came to a stop at a traffic light, the officers approached the car and the three men inside. Officer Beldon had a flashlight in one hand and his pistol at his side in the other hand. Beldon identified himself as the police, and saw appellant, who was sitting in the rear passenger seat, put an object on the floor. Beldon "removed [appellant] from the car," and saw a plastic bag containing smaller ziplock packets of a white rock substance on the car floor where appellant's feet had been. Beldon seized the plastic bag and arrested appellant.
The trial judge denied appellant's motion to suppress the drugs on the ground that the officers' approach to the car did not constitute a stop invoking the Fourth Amendment, and, alternatively, if it did, the police had a reasonable and articulable suspicion that criminal activity had occurred at First and Rhode Island Avenue which justified the minimal intrusion engendered by approaching the car. The judge credited Beldon's testimony that, based on his experience he thought he had witnessed a drug transaction involving one of the men in the car that the police followed.[1] The judge also found that the police had articulable suspicion to order appellant out of the car when he was observed dropping something, and that upon seeing the white packets in the plastic bag, the police had probable cause to seize the packets and arrest appellant.

II
Appellant contends that the approach of the police and the announcement that they were the police constituted a Terry stop which was not supported by a reasonable suspicion of criminal activity, and that when the police removed appellant from the car, he was arrested without probable cause. Hence, he contends, the evidence seized from the car was a fruit of an illegal seizure and should have been suppressed.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court made clear that personal intercourse between the police and citizens involves a seizure when the officer "by *988 means of physical force or show of authority, has in some way, restrained the liberty of a citizen." 392 U.S. at 19 n. 6, 88 S.Ct. at 1879 n. 6. We agree that when the police officer approached the car with his gun at his side and announced his identity, appellant's liberty was restrained. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 reh'g. denied, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980) ("In view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."); see Smith v. United States, 558 A.2d 312, 314 (D.C. 1989) (en banc); Helmsley v. United States, 547 A.2d 132 (D.C.1988).
Although the police did not stop or block the car in which appellant was a passenger, the show of force exhibited by the police constituted at least a Terry stop. While the nature of the suspected activity observed at First and Rhode Island Avenue, and Beldon's concern that the car's occupants might be armed or take other dangerous or evasive action, combined with the time of night and the reduced ability to observe and evaluate the occupants' reactions to his approach while in the car, may well have warranted the officer's concern for his safety, a reasonable person would think his liberty was restrained when an officer holds his gun at his side and announces his authority.[2]See United States v. Jackson, 652 F.2d 244 (2d Cir.), cert. denied, 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981) (Terry stop where officer approached car with gun drawn, but not pointed); Miley, supra note 2, 477 A.2d at 722-23 (officer's command, with gun drawn, to come forward sufficient to curtail suspected gunman's freedom to leave); United States v. Diggs, 173 U.S.App.D.C. 95, 522 F.2d 1310, 1314 (1975), reh'g. denied sub nom., United States v. Floyd, 535 F.2d 1299, cert. denied, 429 U.S., 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976) (officers' gun-drawn approach of car, based on "powerful suspicion," while showing identification and ordering three suspected armed robbers to raise hands). See also Ceballos, supra note 2, 654 F.2d at 184 (blocking car, approaching with guns drawn and ordering out of car sufficiently intrusive to require probable cause). It does not matter for purposes of a Terry stop that the officer did not actually point his gun at the men in the car. See Jackson, supra, 652 F.2d at 249 (guns drawn but not pointed does not turn Terry stop into an arrest). *989 Further, we need not decide whether the officer's approach with his gun drawn or his subsequent action removing appellant from the car constituted such excessive use of force as would turn a Terry stop into an arrest of appellant since we conclude that the police did not have articulable suspicion under Terry.[3]

III
The Supreme Court has noted that the "balancing of competing interests" is "the key principle of the Fourth Amendment." Michigan v. Summers, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981). See Maryland v. Buie, supra note 2, 110 S.Ct. at 1096-97. Consequently, the determination whether police behavior is supported by a reasonable and articulable suspicion of criminal activity lies in a comparison between the degree of police intrusion and the level of police justification. See Mendenhall, supra, 446 U.S. at 561, 100 S.Ct. at 1881; note 3, supra. Under Terry, the police officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. 392 U.S. at 21, 88 S.Ct. at 1879-80. The Terry exception to the probable cause requirement is limited to circumstances "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Id. at 30, 88 S.Ct. at 1884 (emphasis added). While every case will differ based on its facts, our decision in Jones v. United States, 391 A.2d 1188 (D.C.1978), makes clear the deficiency in the instant case.
In Jones, a police officer noticed two men in a parked car with the dome light on at about one o'clock a.m. The car was in an area known for drug trafficking and the passenger was smoking a cigarette. As the officer approached the car, the passenger made a quick movement as though trying to hide something under the seat. The officer called for assistance and ordered the men out of the car. When the passenger alighted, the officer saw a greenish weed on the right front seat and numerous brown envelopes on the rear seat. Based on his experience the officer recognized the envelopes as those used to package marijuana for sale. The officer arrested the two men.
On appeal, the court reversed the convictions. While no seizure of the occupants of the car occurred when the officers walked up to the car, there being neither a show of force or authority, the court held that when the police ordered the men out of the car without making further inquiry, the occupants had been unlawfully seized for Fourth Amendment purposes since the police were acting upon circumstances that were only "marginally suspicious." 391 A.2d at 1191. Neither the passenger's gesture nor the other circumstances provided specific and articulable suspicion to justify ordering the men out of the car, the court noting that the police had no prior complaint of a crime nor any prior contact or observation of the occupants engaged in criminal conduct. Id. The court rejected the government's argument that under Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977),[4] the officer *990 could order the occupants out of the car for his own protection once he had reason to speak to them of circumstances that are marginally suspicious, reasoning that to do so "would allow the government to bootstrap its way to a full blown `seizure' in the absence of articulable facts indicating that `criminal activity is afoot.'" Id. at 1190-91 (quoting Terry v. Ohio, supra, 392 U.S. at 30, 88 S.Ct. at 1884). See also United States v. Page, 298 A.2d 233, 236-37 (D.C. 1972) (furtive gesture of backseat passenger of car stopped for speeding provided only "vague suspicion based largely on ambiguous conduct" insufficient for Terry seizure, distinguishing McGee v. United States, 270 A.2d 348 (D.C.1970) (search of driver stopped for speeding where driver appeared to attempt to hide something).
In crediting Officer Beldon's testimony that he thought he had seen a drug transaction at First and Rhode Island Avenue, the trial judge could properly take into account Beldon's experience in making arrests in that area, his personal knowledge that a lot of crack cocaine was sold on that corner, and his observation of conduct consistent with a drug transaction, or one part of a drug transaction, including the retreat by the man passing the small white object to a waiting car that drove off. See Coleman v. United States, 337 A.2d 767, 769 (D.C.1975) (evaluate circumstances objectively as the officer knew them at the time). But the Terry exception to the probable cause requirement is not as broad as the trial judge's ruling suggests. Appellant was "seized" by the police officer based on suspicions arising entirely from Beldon's earlier observation of another passenger transferring a small, white object to a person on a street corner that was known for high-drug activity. Yet all that Beldon saw was one man pass another man a small white object on a corner known for drug trafficking. The object may have been illegal drugs or any number of other things.[5] The trial judge discredited the officer's testimony that he saw currency exchanged for the small white object, and there was no other evidence that anything else was exchanged for the object. See note 1, supra. Without more, the officer's experience could, at best, only provide a basis for possible suspicion, which is not the same as Terry's "specific and articulable suspicion." Terry, supra, 392 U.S. at 21, 88 S.Ct. at 1879-80.
Circumstances other than the nature of the neighborhood must form the basis of a reasonable suspicion that criminal activity was afoot. See, e.g., Smith, supra, 558 A.2d at 316 (citing In re D.J., 532 A.2d 138, 143 (D.C.1987) and Curtis v. United States, 349 A.2d 469, 472 (D.C. 1975) ("without a great deal more, [the high drug-trafficking nature of the neighborhood] cannot support an inference that appellant was engaged in criminal conduct")). See also Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). Admittedly, the trial judge was not required to find that the police had probable cause, as is at issue in cases discussing the probity of two-way transfers.[6] But there must be particularized evidence from which the officer could reasonably have concluded that the object had some connection with illegal drugs, as might arise if the transferred package was in typical drug packaging or was exchanged for currency. Even after appellant's gesture, all the police had was an "inchoate and unparticularized suspicion or `hunch,'" Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, but no basis for a reasonably warranted individualized suspicion of criminal activity. See Maryland v. Buie, supra note 2. The officers had less to go on here than in White, supra, note 2, 208 U.S.App.D.C. at 290-91, 648 F.2d at 30-31, on which the government relies, where the police had an anonymous tip about drug trafficking activity. See United States v. Johnson, 540 A.2d 1090 (D.C.1988) (anonymous tip of man with gun in Volkswagen car at designated *991 location). While in some respects this case is like Price v. United States, 429 A.2d 514 (D.C.1981), where the police approached a parked car knowing that narcotics users had recently begun to use parked cars to shoot drugs and police suspicion was heightened when one of the passengers bent forward and then sat upright, the occupants of the car in Price, unlike here, exited as the police approached and the police then saw, where the passenger making the movement had been, a manila "coin" envelope, thus providing probable cause to arrest. Id. (citing Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86 (1958) (experience of officer giving rise to probable cause)).
Beldon's observations at First and Rhode Island Avenue entitled him to be suspicious about what one of the men, and possibly others, in the car had done. They did not provide him with an objective basis, see Mendenhall, supra, 446 U.S. at 561, 100 S.Ct. at 1880-81, to conclude that the man who passed the white object, much less the two other occupants of the car, were engaged in criminal activity. The police officer could properly approach the car, his gun in his holster, and ask the man who passed the object, as well as the others in the car, to answer questions.[7] But the police reaction to appellant's movement cannot be justified under Terry. Appellant's action could not, in view of the limited nature of Beldon's observation of another passenger's action at First and Rhode Island Avenue, provide a basis for removing him from the car, and the officer's observations thereafter could not provide a basis for lawful seizure of the plastic bag and the arrest of appellant.
Accordingly, in view of the "marginally suspicious" circumstances, as distinct from "specific and articulable facts," that would provide the officer with a reasonable basis to conclude that criminal activity was afoot, we hold that appellant's arrest and the seizure of the plastic bag containing drugs were unlawful.
Reversed.
TERRY, Associate Judge, concurring:
I join in the opinion of the court. I add these few words simply to emphasize that our reversal here is fact-specific and should not be read too broadly.
For me, at least, the key to the case is to be found in footnote 1 of Chief Judge Rogers' opinion for the court, particularly the last sentence. It is true that the trial judge explicitly found that Officer Beldon had seen the driver of the car (in which appellant was a passenger) "exchange a small object for something" at the corner of First Street and Rhode Island Avenue, N.W., one of the countless hotbeds of the drug trade in our city. The only testimony about this supposed "exchange," however, was Officer Beldon's statement that he saw an exchange of a small white object for currency. The trial judge expressly disbelieved the officer's testimony that he had seen any currency, which necessarily means that the "something" which the judge found to have been exchanged for the small object was not currency. Since there was no proof that anything other than currency was transferred to the holder of the small white object, it follows that the finding of an exchange of "a small object for something" is not supported by any evidence. On that basis I vote to reverse and join in the court's opinion.
STEADMAN, Associate Judge, dissenting:
I agree with the majority that the police actions here amounted to a Terry stop, but I would uphold the trial court's ruling that the stop was based on the requisite "specific and articulable suspicion." I may arrive at this contrary result from the majority solely because I do not share their view of the operative facts. The majority opinion *992 asserts that no two-way exchange took place, on the basis that the contrary finding of the trial courtthat the police officer saw an adult male exchange a small white object for "something"was "unsupported by the record."[1] The police officer testified that he saw currency exchanged for the small white object. The trial court disbelieved the testimony insofar as the exchanged item was currency but believed the testimony insofar as "something" was exchanged.[2] It seems to me this is a perfectly acceptable conclusion for a finder of fact to draw. It is standard fare that a finder of fact may partially believe a witness. Kinard v. United States, 416 A.2d 1232 (D.C.1980); Criminal Jury Instructions for the District of Columbia, No. 2.11 (3d ed. 1978) (jury to determine "extent to which any witness should be believed"). If I testify "I saw a UFO," the finder of fact might disbelieve I saw an actual UFO but yet fairly conclude that I indeed did see "something" (perhaps an aircraft, a satellite, or a falling star). Or, more mundanely, if I say "I saw John Doe robbing the complainant at gunpoint," a finder of fact might question whether it was actually John Doe I saw (I was too far away, it was too dark, etc.) but yet believe that I certainly saw someone robbing the complainant.
I turn then to the facts as found by the trial court. The police officer here testified that he saw an adult male approach another male and exchange a small white object for "something." The event took place in an area known for drug-dealing, where the officer himself had made 15 or 20 drug-related arrests, and at a corner on which, as the majority points out, the officer had personal knowledge that a lot of crack cocaine was sold. The adult male then retreated into a waiting car and drove off before the officer had an opportunity to approach him about the transaction. I see no reason why the officer was then required to "simply shrug his shoulders and allow ... a criminal to escape," Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), rather than proceed to attempt to "detain that person briefly in order to "investigate the circumstances that provoke suspicion.'" Berkemer v. McCarthy, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (citation omitted).
In Peterkin v. United States, 281 A.2d 567 (D.C.1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972), we found probable cause to exist for arrest where a defendant was seen giving "something" out of a vial (which the officer had seen used in the past for transporting narcotics) in exchange for cash in a high-drug neighborhood. In Tobias v. United States, 375 A.2d 491, 494 (D.C.1977), we likewise found probable cause to arrest where, inter alia, the defendant was seen removing a "small object" from a shoulder bag and passing it to a man in exchange for money; we noted that "the exchange of small objects for currency is an important and sometimes decisive factor in determining the existence of probable cause."[3] Here, not currency, to be sure, but "something" *993 was exchanged for a "small white object." If currency is supportive of probable cause to arrest, "something" should support the lesser intrusion of a Terry stop.[4]
While the Fourth Amendment indeed requires "`some minimal level of objective justification' for making the [investigative Terry] stop," that level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less demanding than [the showing required] for probable cause." United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). I would uphold the trial court's ruling that the requisite test was met here.[5]
NOTES
[1] The trial judge also found that the white package had been exchanged for something, although he discredited Beldon's suppression testimony that he had seen currency exchanged since the officer's earlier testimony at a co-defendant's preliminary hearing was to the contrary. Since there was no evidence that the white package had been exchanged for anything else, the trial judge's finding of a two-way transaction is unsupported by the evidence.
[2] While recognizing that the particular circumstances facing a police officer are of infinite variety, courts still differ regarding the extent to which they view an officer's concern for his safety, in connection with investigating suspected drug trafficking, as justifying an officer drawing his gun while making what would otherwise be a Terry stop. See, e.g., United States v. Ceballos, 654 F.2d 177, 182-84 & nn. 7, 9 & 16, 187 (2d Cir.1981) (majority opinion and Meskill, J., dissenting); United States v. White, 208 U.S. App.D.C. 289, 306, 315-16 & n. 21, 648 F.2d 29, 46, 55-56 & n. 21, cert. denied, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 235 (1981) (Edwards, J., dissenting). Some courts have drawn a distinction based on whether the officer has prior information that the suspect is armed or was involved in an armed offense. See Maryland v. Buie, ___ U.S. ___, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (citing Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883; and Michigan v. Long, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3480-81, 77 L.Ed.2d 1201 (1982)). Indeed, appellant correctly notes that to date our cases involving Terry stops of suspects where the police have drawn their guns have involved armed suspects. E.g., Groves v. United States, 504 A.2d 602 (D.C. 1986) (tip for man with gun in car); Davis v. United States, 498 A.2d 242 (1985) (suspected gunman); Miley v. United States, 477 A.2d 720 (D.C.1984) (suspect in killing by gun shot). Of course, supervening behavior, such as a furtive movement during the course of an investigatory stop, may reasonably lead an officer to fear for his safety and justify an escalation in the level of force used. E.g. White, supra, 208 U.S.App. D.C. at 299-300, 648 F.2d at 39-40 (citing United States v. Thompson, 558 F.2d 522, 524 (9th Cir. 1977), cert. denied sub nom., Reeve v. United States, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978)) (drawing of weapon justified after officers had identified themselves and ordered the vans to stop and one van started to move, then lurched forward); United States v. Maslanka, 501 F.2d 208, 213 (5th Cir.1974), cert. denied sub nom., Knight v. United States, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975) (reasonable for officer to approach car at gunpoint after five-mile, high-speed chase); United States v. Bull, 565 F.2d 869, 871 (4th Cir.1977), cert. denied, 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978) (suspects bent over when policeman approached as if to hide faces; one had on heavy jacket though it was a warm night; held reasonable to use gun, stop, and frisk suspects).
[3] An evaluation of the reasonableness of a specific stop turns on "the facts and circumstances of each case. The Supreme Court has emphasized (i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience." Mendenhall, supra, 446 U.S. at 561, 100 S.Ct. at 1881. Compare White, supra note 2, 208 U.S.App.D.C. at 295-96, 648 F.2d at 35-36 and Davis v. United States, supra note 2, 498 A.2d at 245 (drawn weapons on suspected gunman; a Terry stop where defendant briefly held for show-up identification) with United States v. Serna-Barreto, 842 F.2d 965, 967 (7th Cir.1988) ("It would be a sad day for the people of the United States if police had carte blanche to point a gun at each and every person of whom they had an `articulable suspicion' of engaging in criminal activity.").
[4] In Pennsylvania v. Mimms, supra, the Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S. at 111 n. 6, 98 S.Ct. at 333 n. 6. See United States v. Ordway, 329 A.2d 776 (D.C. 1974).
[5] C.f., e.g., Vicks v. United States, 310 A.2d 247, 249 (D.C.1973) (no probable cause where police saw cigarette-size package wrapped in white handkerchief).
[6] E.g., Tobias v. United States, 375 A.2d 491 (D.C.1977); Peterkin v. United States, 281 A.2d 567 (D.C.1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972).
[7] See United States v. Barnes, 496 A.2d 1040, 1044-45 (D.C.1985). The man who made the transfer of the small white object, as well as appellant, would have been free to decline to answer any question. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979) (quoting Terry v. Ohio, supra, 392 U.S. at 34, 88 S.Ct. at 1886) (White, J., concurring); In re D.J., supra, 532 A.2d at 141-42.
[1] A factual finding by a trial court is binding on us unless "plainly wrong or without evidence to support it." D.C.Code § 17-305 (1989).
[2] The trial court at several points made clear its belief that the officer witnessed an "exchange." E.g.: "I credit the fact that [the officer] saw an exchange that he believed was a drug transaction.... [W]hile certainly possible he saw currency, I can't find that it was proven here. So, the question becomes what on this record did he see. I do believe he saw an exchange on a street corner." And subsequently: "I credit the testimony of the officer ... that on that corner he saw the adult, an adult, not the respondent, exchange a small object for something. I cannot find by clear and convincing evidence that it was currency, but that there was an exchange for a small object that he, based on his experience, had a reasonable basis to conclude could have been a narcotic."
[3] Added factors present were that the appellant twice engaged in such a transaction and attempted to evade the officers by fleeing. See also Mozingo v. United States, 503 A.2d 1238 (D.C.1986), where probable cause to arrest was found when appellant removed a white container from a bag, emptied a number of pills, returned the pills to the container, and then gave the container to a man in exchange for some money. In United States v. Bennett, 514 A.2d 414 (D.C.1986), we found sufficient support for a Terry stop where there was only a one-way handing over of currency, but a number of other factors were present, particularly flight.
[4] The case before us is different from Jones v. United States, 391 A.2d 1188 (D.C.1978). The officer in that case, unlike ours, had no reasonable grounds to suspect anything was amiss as he approached the car, so everything turned on whether the passenger's movement was enough to justify a Terry stop.
[5] I do not believe that the officer's approach with his gun drawn but at his side or, especially with the reaction of appellant following announcement of the police presence, the subsequent removal of appellant (although not the original person under suspicion) from the car elevated the Terry stop into an arrest. See United States v. Jackson, 652 F.2d 244 (2d Cir.), cert. denied, 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981). Given the majority holding, I do not explore these issues further.