**Troy THOMPSON and Tyrone D. Hall, Appellants,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 97–CF–282 and 97–CF–685.**

District of Columbia Court of Appeals.

Argued Nov. 4, 1999.

Decided Feb. 3, 2000.

Madhavan K. Nair, Herndon, VA, appointed by the court, for appellant Thompson.

Edward DeV. Bunn, appointed by the court, for appellant Hall.

John S. Irving, IV, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Ann M. Carroll, were on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and MACK, Senior Judge.

REID, Associate Judge:

Appellants Troy Thompson and Tyrone D. Hall challenge their convictions for unlawful possession of a controlled substance (cocaine), in violation of D.C.Code § 33–541(d) (1998).[1] Charged in the same indictment, which resulted in the convictions of Thompson and Hall, were codefendants Garland J. Lathan and William J. Corum, Jr. Thompson contends that the trial court erred by: (1) allowing the government to introduce additional evidence after the parties made closing arguments during the hearing on pre-trial motions;[2] and (2) denying his motion for suppression of physical evidence. Hall argues that the trial court erred by denying his motions: (1) to suppress evidence; and (2) to sever his trial from that involving a drug transaction between codefendants Lathan and Corum. We affirm.

## FACTUAL SUMMARY

The record on appeal reveals the following events which occurred on January 31, 1996, around 9 p.m. in the 600 block of Columbia Road, N.W., in the District of Columbia.[3] Metropolitan Police Department ("MPD") Officer Patrick Alan Goodwin was on a surveillance assignment at an observation post in an FBI van in the 500 block of Columbia Road, N.W., because of "ongoing drug complaints in that area." Officer Goodwin "used the telescope feature that was located in the van" to observe the premises at 600 to 606 Columbia Road. His observation post was about 80 yards from codefendant Lathan. Officer Goodwin watched Lathan sit on the porch of 602 Columbia Road in the cold for about

twenty minutes. At about 9:07 p.m. Officer Goodwin, who at the time had been with the MPD for about six years and assigned to the vice unit for about a year and a half, saw a two-door Nissan drive into the area. The vehicle bore District license tags. The driver of the car exited the vehicle while a passenger remained inside. Officer Goodwin could not describe the passenger. Lathan left the porch to meet the driver, later identified as Thompson. The two men conversed and "walk[ed] towards the mouth of the alley right beside 600 Columbia Road." The area was illuminated by three "high crime [District] lights." The men stopped. "Lathan then reached down and picked up an object and handed it to [Thompson], [who] then in return gave [ ] Lathan an undetermined amount of currency." The object was "small" but Officer Goodwin could not see specifically what it was. Lathan put the currency in his pocket and proceeded back to the porch of 602 Columbia Road, N.W. Thompson returned to his vehicle and "display[ed] the object . . . to the passenger," later identified as Hall. The Nissan moved toward Georgia Avenue.

Officer Goodwin gave a "lookout" over "a hand[-]held radio" to the other officers assigned to the surveillance unit. He stated at trial: "I gave a lookout for the buyer which was a Black male wearing a black jacket and blue[-]jeans. He was the driver of the vehicle. I also gave the tag number of the vehicle . . . ." Officer Goodwin acknowledged that he "never gave any type of description of the passenger" in the Nissan, and that he never saw the passenger.[4] An arrest team stopped the Nissan

1. Ultimately Thompson was sentenced to 90 days in prison, with all but 60 days suspended. Hall was sentenced to 120 days in prison.

2. We see no merit to this argument. Given the presence of four co-defendants and some initial confusion at the suppression hearing, we cannot say that the trial court abused its discretion by allowing the government to reopen its case to present additional testimony. See Rambert v. United States, 602 A.2d 1117, 1119 (D.C.1992) ("A decision allowing the

prosecution to reopen its case is a matter within the sound discretion of the trial court." (citations omitted)).

3. Portions of the suppression hearing apparently were not recorded but trial testimony of the officers who appeared at the hearing is part of the record on appeal.

4. Officer Goodwin's police notes apparently contained a description of Hall, the passenger in the car. The trial court found that Officer

"within thirty seconds" of the "lookout" given by Officer Goodwin.

Before the arrest unit could seize Lathan, Officer Goodwin observed him engage in another transaction with a Black male in a two-door, blue BMW. Lathan again left the porch of 602 Columbia Road to meet the driver of the car. They proceeded to the same alley. Lathan "went down again in the same area of the first transaction and picked up an object and gave it to [the driver of the BMW]." The driver, later identified as Corum, returned to his car and drove into the 700 block of Columbia Road where he was stopped. Eventually, Lathan was apprehended.

Officer Eric Espinosa, who at the time of the incident had been a police officer for about eight years and who then was assigned to the vice unit, testified at trial that he and two other officers who were with him (Officers Timlick and Grant), received a "lookout ... for a dark colored Nissan [with a] subject ... wearing a dark colored coat ...." He did not recall whether the "look out" broadcast included the license number of the Nissan. About "a minute" later, the officers stopped the Nissan. "As [Officer Espinosa] approached the vehicle, [he] observed the driver handing an object to the passenger ...." Officer Espinosa subsequently arrested Thompson. On cross-examination, Officer Espinosa stated: "I observed the driver handing with his right hand a small object to the person on the passenger's side as I approached the vehicle." When asked whether or not that was all he saw, Officer Espinosa responded: "Yes." He did not remove the object from the Nissan. He did not see any brown paper.[5]

Officer Cardis Timlick, a member of the team that arrested Thompson and Hall on January 31, 1996, stated at trial that "Investigator Goodwin gave a lookout of ... a brown Nissan Sentra...."[6] Within "a minute or two" of the "lookout," Officer Timlick "saw the Nissan Sentra going west on Columbia Road in the 700 block." He saw no other dark Nissan in the area. He and the other officers "stopped the vehicle based on a lookout of ... Thompson." As "[he] approached the passenger's side [of the Nissan] ..., [] Thompson was observed handing something in the form of a small object to [] Hall."[7] Furthermore, Hall "was observed dropping a black [z]iploc containing a white rock substance to the floorboard of the vehicle." Officer Timlick "retrieved" the object and it field tested positive for cocaine.[8] On cross-examination, Officer Timlick testified that he arrested Hall because: "I observed him dropping a [z]iploc containing a white rock substance to the floorboard of the vehicle in which he was sitting." Later, Officer Timlick stated: "I saw him drop something and when I looked to see what he

---

Goodwin "could not identify [Hall] with any particularity."

**5.** During the suppression hearing Officer Timlick testified that he saw Thompson hand Hall "a brown piece of paper, containing a ziplock, containing a white rock substance."

**6.** At the suppression hearing, Officer Timlick asserted that he received "a lookout of [a] dark colored Nissan." Furthermore, he said, "Officer Goodwin ... gave the lookout of [] Hall inside the vehicle, as well as [] Thompson and other subjects also." Officer Goodwin described Hall's clothing as "a gray sweat shirt, green coat and black hat." Officer Goodwin "may have said green pants instead of Green coat."

**7.** During his suppression hearing testimony, Officer Timlick added: "It looked like it was brown in color."

**8.** According to Officer Timlick's suppression hearing testimony, Hall was seen "taking the object from [] Thompson." As the officer approached the passenger side of the vehicle where Hall sat, "he was observed dropping that object, which was a brown piece of paper, containing a zip lock, containing a white rock substance." Officer Timlick retrieved the object but "[could not] remember if it was right beside the vehicle on the ground, next to the vehicle." On cross-examination, he declared: "[I]t could have been inside the vehicle where he dropped them at or it could have been beside the vehicle where he dropped them at ...."

dropped, it was a black [z]iploc containing a white rock substance." He "did not arrest [Hall] until the field test was conducted which [ ] tested positive for cocaine." Furthermore, Officer Timlick declared: "Mr. Thompson was the one we wanted to stop in the vehicle. Mr. Hall was not the one we wanted to get involved in this transaction at all up until I observed him while we were approaching the vehicle to stop Mr. Thompson and no lookout was for a brown paper bag . . . ." Nor did Officer Timlick ever see or recover a brown paper bag from the Nissan. Still later on cross-examination, Officer Timlick asserted: "I never said I saw [Thompson] give [Hall] a black [z]iploc. I stated I saw [Thompson] give [Hall] something in the shape of a small object."

The final government witness at trial, Detective Charles Culver, gave expert testimony at trial concerning, *inter alia*, the distribution of drugs. He indicated that a person selling drugs "might use a stash" to hide the drugs, to avoid discovery of the drugs on their person, and to preclude robbery "by other criminals." None of the defendants presented any witnesses.

## ANALYSIS

 Both Thompson and Hall contend that the trial court erred by denying their motions to suppress evidence. Our review of the denial of a suppression motion "is limited." *Lawrence v. United States*, 566 A.2d 57, 60 (D.C.1989). "Essentially our role is to ensure that the trial court has a substantial basis for concluding that no constitutional violation occurred." *Id.* (citing *Goldston v. United States*, 562 A.2d 96, 98 (D.C.1989)). Moreover, "in reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States*, 597 A.2d 1318, 1320 (D.C.1991) (en banc) (citing *Nixon v. United States*, 402 A.2d 816, 819 (D.C.1979)). "We must accept the trial judge's findings of evidentiary fact and his

[or her] resolution of conflicting testimony." *Brown v. United States*, 590 A.2d 1008, 1020 (D.C.1991) (citing *Lawrence*, 566 A.2d at 60).

Thompson asserts "that the police seized him without probable cause or reasonable suspicion." Hall maintains, primarily, that "an exchange or sale of an unknown object, standing alone, does not justify a police stop or seizure of the suspect or of an automobile"; and that "[i]f what the police saw in the 600 block of Columbia Road did not provide probable cause or reasonable belief that a crime had been committed[,] there was no legal justification[,] under any scenario[,] for the subsequent stop/seizure of the automobile." The government supports the trial court's determination that "there [was] probable cause to believe [that Thompson had] just bought drugs [on January 31, 1996 in the 600 block of Columbia Road, N.W.]." In addition, the government argues, alternatively, that the officers had "sufficient reasonable articulable suspicion to stop the vehicle driven by . . . Thompson" based on the information relayed by Officer Goodwin, and that "[a]fter stopping the vehicle, the reasonable articulable suspicion ripened into probable cause when the officers observed . . . Thompson hand the object to . . . Hall"; or, alternatively, the "officers acted reasonably by ordering [Thompson and Hall] to exit the vehicle, and thus recovered the evidence from plain view."

We examine whether: (1) Officer Goodwin had probable cause or a reasonable, articulable suspicion to believe that Thompson and Hall engaged in criminal activity in the 600 block of Columbia Road, N.W.; (2) the arresting officers had a reasonable, articulable suspicion to justify the stop of the Nissan car; and (3) the arresting officers had a lawful basis for arresting Thompson, seizing the ziploc, bag and arresting Hall. We address, first, whether Officer Goodwin had probable cause or a reasonable, articulable suspicion to believe that Thompson and Hall engaged in criminal activity, an illegal drug transaction, in

the 600 block of Columbia Road, N.W., on January 31, 1996.

The portion of the suppression transcript that is available on appeal reveals that the trial court focused much of its attention on the suppression motions of codefendants Lathan and Corum and did not make many factual findings relating to the activity of Thompson and Hall on Columbia Road. Nonetheless, on the first issue as to whether Officer Goodwin had probable cause or reasonable, articulable suspicion to believe that Thompson and Hall engaged in criminal activity on Columbia Road, N.W., the trial court concluded "that the totality of the testimony ... [showed that] the government has established that [Officer] Goodwin saw a transaction that he believed to be a narcotics sale and that the narcotics that Thompson bought he passed [ ] to Hall ...." Furthermore, the trial court determined that: "[T]here is probable cause to believe your client had just bought drugs."

■ Determinations of reasonable suspicion and probable cause are reviewed *de novo* on appeal. *See Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The record shows that Officer Goodwin was engaged in surveillance on January 31, 1996, because there were ongoing drug complaints in the 600 block of Columbia Road, N.W. For about twenty minutes, Officer Goodwin observed codefendant Lathan sitting on the porch of 602 Columbia Road, N.W. in the cold of winter. When the Nissan drove up, Lathan left the porch to meet Thompson. The two men engaged in conversation and walked to the mouth of an alley beside 600 Columbia Road, N.W. There, Lathan reached down, picked up a small object and handed it to Thompson in exchange for currency. Thompson returned to the Nissan and displayed the object to Hall. Officer Goodwin could only describe the object as "small."

■ While the factual context of the events on Columbia Road, N.W., may not have given Officer Goodwin probable cause to believe that Thompson engaged in criminal activity because Officer Goodwin only saw a small object, his observations were sufficient to provide him with a reasonable, articulable suspicion that Thompson participated in an illegal drug transaction. It is true that "the mere passing of money on a street does not justify a *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stop." *Duhart v. United States,* 589 A.2d 895, 899 (D.C.1991) (citation omitted). In this case, however, we have more than the one-way exchange circumstances described in *In re T.T.C.,* 583 A.2d 986 (D.C.1990). In that case, someone handed a small white object to another person. We held "that appellant's arrest and the seizure of the plastic bag containing drugs were unlawful." *Id.* at 991.

The case before us resembles somewhat the two-way exchange in *Tobias v. United States,* 375 A.2d 491 (D.C.1977), where appellant, who was carrying a shoulder bag, pulled out a small object, and gave it to another person who handed him some currency in return. In *Tobias,* we upheld the trial court's finding that the police had probable cause to arrest and search the appellant. We stated that: "The exchange of small objects for currency is an important and sometimes decisive factor in determining the existence of probable cause." *Id.* at 494 (citation omitted). Nonetheless, our conclusion supporting the trial court's finding of probable cause was based on additional factual circumstances such as flight of the appellant. A two-way exchange also took place in *Coles v. United States,* 682 A.2d 167, 168 (D.C.1996), a case in which "a police sergeant with nineteen years of police experience watched appellant speak with another person and give that person currency in exchange for a ziplock plastic bag which the latter retrieved from an apparent stash in a nearby tree-box space." *Id.* at 168. Unlike the case before us, the police saw not only a "small object," but a ziplock plastic bag as well. The officer's experience with the packaging and stashing of drugs, in addi-

tion to what he saw, supported the probable cause determination. As we said: "An experienced officer, familiar with the conventional packaging of drugs and the common stashing of them in places like the tree-box space involved here, could reasonably conclude that the glassine bag was not empty but instead contained a controlled substance." *Id.* (footnote omitted).

Another alleged two-way exchange occurred in *Peterkin v. United States*, 281 A.2d 567 (D.C.1971). In that case, an experienced officer saw one appellant give another "something" from a vial in exchange for approximately $2 in cash in an area known to be frequented by drug users. *Id.* at 567. The officer had previously seen narcotics carried in plastic vials. On this evidence we sustained a finding of probable cause, but in *Peterkin*, the officer was able to see that the object exchanged for cash was a plastic vial in which drugs were known to be transported. In contrast, a divided panel in *In re T.T.C.*, *supra*, a one-way exchange case, determined that appellant's arrest and the seizure of a bag containing drugs were unlawful because the police only "saw ... one man pass another a small white object on a corner known for drug trafficking." 583 A.2d at 990. The majority declared that: "Without more, the officer's experience could, at best, only provide a basis for possible suspicion," which is not the same as *Terry's* " 'specific and articulable suspicion' " requirement. *Id.* (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). Noteworthy in *In re T.T.C.* was the trial judge's decision to discredit the testimony of the police officer "that he saw currency exchanged for the small white object." *Id.*

In the two-way exchange case before us, the trial judge credited the testimony of the police officers, even though there were some differences in the account of events, because the differences were not "fundamental." We must accept the trial court's resolution of conflicting testimony. *Brown*, 590 A.2d at 1020. Moreover, Lathan sat on the porch in the cold of winter

for some twenty minutes before Thompson arrived. This was unusual conduct. He left the porch twice to greet the drivers of two different cars, the Nissan and the BMW, conversed with the drivers and took them to the mouth of an alley, where he reached down to retrieve an object which he passed to Thompson. Lathan's behavior in the alley—reaching down to retrieve an object—was consistent with that of persons who stash drugs away from their person and who retrieve them at the time of a narcotics sale. *See United States v. Brown*, 708 A.2d 637, 639 (D.C.1998) (officers suspected a drug transaction when appellant walked to a nearby grassy area, picked up object and tossed it to another individual). During the trial concerning the drug possession charge against Thompson and Hall, Detective Charles Culver of the MPD gave expert testimony that it is not unusual for someone who sells drugs on the street to have a "stash" which "could be anywhere." They could "[t]ake a paper bag with all these little rocks of cocaine and place it in some bushes, high grass area, maybe a vehicle, any number of places they might want to hide their drugs ..., back yards, anywhere," so that they are not "caught with the drugs on them." Given Lathan's unusual conduct of sitting on the porch in winter for at least some twenty minutes, his conversation with Thompson followed by a walk to an alley, a stooping to retrieve something, a two way exchange—currency for an object, and the ongoing complaints about drug activity in the area of Columbia Road where Thompson and Lathan were seen, we conclude that Officer Goodwin had a reasonable, articulable suspicion under *Terry*, *supra*, to believe that Thompson engaged in criminal activity in the nature of a drug transaction.

Although the factual circumstances that unfolded in the 600 block of Columbia Road on January 31, 1996, were sufficient to support Officer Goodwin's reasonable, articulable suspicion that Thompson was engaged in criminal activity in the 600

block of Columbia Road, they are insufficient with respect to Hall. Officer Goodwin stated that Thompson "display[ed] the object . . . to the passenger." There is no indication that Hall took the unidentified object, and no other facts to support a suspicion, at that point, that Hall was engaged in criminal activity. Nor does the government argue that Hall had constructive possession of the cocaine. Hall's mere association with Thompson could not support an inference that he was engaged in criminal activity in the 600 block of Columbia Road, N.W. *See Smith v. United States*, 558 A.2d 312, 314 (D.C.1989). Indeed, Officer Timlick candidly acknowledged that, initially, Hall was not the subject of his suspicion.

■ We turn, next, to whether the arresting officers had a reasonable, articulable suspicion to justify the stop of the Nissan car. "A police officer must have a reasonable, articulable suspicion that criminal activity is afoot before that officer lawfully can stop (or seize) an individual without that person's consent." *Speight v. United States*, 671 A.2d 442, 446 (D.C. 1996) (citing *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court of the United States declared that: "The Fourth Amendment [to the Constitution] requires 'some minimal level of objective justification' for making the stop." *Id.* at 7, 109 S.Ct. 1581 (citing *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). It is insufficient for a police officer to merely articulate "an inchoate and unparticularized suspicion or 'hunch.'" *Id.* (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868).

Thompson argues that because there was no testimony that the object which he received was drugs, the police lacked reasonable, articulable suspicion that he was engaged in criminal activity and, therefore, had no basis to stop his car. Hall contends that the lookout broadcast was "legally deficient" because "[i]t was not sufficiently detailed and peculiarly distin-

guishing of the automobile or the alleged suspects." Furthermore, he maintains, "[t]he broadcast for a two-door Nissan, with [District] tags, containing two people is too generic and does not distinguish the automobile from all of the other similar[,] popular [and] occupied Nissan automobiles in the District of Columbia."

■ Based upon Officer Goodwin's observations and his "lookout," the arresting officers had a reasonable, articulable suspicion to justify the stop of the Nissan car driven by Thompson for further investigation. That information was reasonably detailed because it described or identified: (1) Thompson as "a black male wearing a blue jacket and blue jeans"; (2) the car as a dark-colored Nissan; and (3) the license number of the car. Furthermore, the car moved only a short distance, from the 600 block of Columbia Road to the 700 block. Officer Espinosa stated that after the lookout broadcast, he saw "a dark colored Nissan," driven by a man "wearing a dark colored coat." Officer Timlick testified that within "a minute or two" of the lookout broadcast, he saw the Nissan in the 700 block of Columbia Road, and that there were no other dark Nissan cars in the area. Therefore, the evidence was sufficient to support the investigative stop of the Nissan that Thompson drove.

■ We next determine whether the arresting officers had a lawful basis for arresting Thompson, seizing the ziplock bag and subsequently arresting Hall. Based on information conveyed by Officer Goodwin regarding the two-way exchange between Thompson and Lathan in the alley, we are satisfied that Officer Espinosa had reasonable suspicion to believe that Thompson had engaged in criminal activity in the form of a narcotics purchase. The information conveyed by Officer Goodwin, coupled with Officer Espinosa's observation of Thompson handing an object to Hall as the officers approached, served as a sufficient basis for arresting Thompson. *See Price v. United States*, 429 A.2d 514,

**316**

517 (D.C.1981). In addition, when Officer Timlick saw Thompson hand an object to Hall, and witnessed Hall dropping the object as the officers neared the Nissan, and saw the object in plain view (described by Officer Timlick at the suppression hearing as "a brown piece of paper, containing a ziplock, containing a white rock substance"), whether inside or outside the Nissan, the officer had a sufficient and reasonable basis not only for suspecting that Hall might be engaged in criminal activity, but also for detaining Hall to conduct further investigation by field testing the object. *See Speight,* 671 A.2d at 449. After the field test showed the presence of cocaine, Officer Timlick had a lawful basis for Hall's arrest. Consequently, based on our discussion, we are satisfied that the trial court did not err in denying Thompson and Hall's suppression motions.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court in both No. 97–CF–282 and No. 97–CF–685.[9]

---

**9.** Hall also contends that the initial joinder of the charges against co-defendants Lathan and Corum, with his charged conduct, was improper under Super. Ct.Crim. R. 8(b) because the charges were unrelated. Even assuming that Hall preserved his severance argument (the trial court never ruled on the motion and the record before us suggests that Hall did not press his motion in the trial court), he cannot prevail because he cannot overcome the presumption favoring joinder. *See Carpenter v. United States,* 430 A.2d 496, 502 (D.C.1981) (quoting *Bruton v. United States,* 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)). Nor can Hall establish prejudice. Hall was tried by a judge, not a jury. The trial judge is presumed to know the law and to refrain from relying on inadmissible evidence. *See Singletary v. United States,* 519 A.2d 701, 702 (D.C.1987). Moreover, there was strong evidence against Hall. He was not just shown the article that Thompson acquired from Lathan in exchange for currency, but when the police approached the Nissan after stopping it, Thompson handed Hall the object and Hall dropped it. Furthermore, Hall relies on Super. Ct.Crim. R. 14 to insist that there was prejudicial joinder. " 'A motion for severance on the ground of prejudicial joinder is committed to the sound discretion of the trial court,' " and "the most compelling prejudice must be shown." *Bright v. United States,* 698 A.2d 450, 454 (D.C.1997) (quoting *Arnold v. United States,* 511 A.2d 399, 404 (D.C.1986)). Based upon our review of the record, Hall has failed to show "the most compelling prejudice," and has failed to make a clear showing that the trial court abused its discretion in failing to grant his severance motion.